KEVIN D. GAMARNIK (273445)
*kgamarnik@foleybezek.com*
FOLEY BEZEK BEHLE & CURTIS, LLP
575 Anton Boulevard, Suite 710
Costa Mesa, California 92626
Telephone: (714) 556-1700
Facsimile: (714) 546-5005

AARON L. ARNDT (290748)
*aarndt@foleybezek.com*
JORDAN A. LIEBMAN (317930)
*liebman@foleybezek.com*
FOLEY BEZEK BEHLE & CURTIS, LLP
15 West Carrillo Street
Santa Barbara, California 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TABITHA SPERRING, PAISLIE MARCHANT, and SALLY POSTON, individually and on behalf of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>LLR, INC., a Wyoming corporation; LULAROE, LLC, a California limited liability company; LENNON LEASING, LLC, a Wyoming limited liability company; MARK A. STIDHAM, an individual; DEANNE S. BRADY a/k/a DEANNE STIDHAM, an individual; and DOES 1-30, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

**CLASS ACTION COMPLAINT**

Plaintiffs, Tabitha Sperring, Paislie Marchant, and Sally Poston ("Plaintiffs") bring this Action against corporate defendants, LLR, Inc., LuLaRoe, LLC, and Lennon Leasing, LLC (collectively "Corporate Defendants" or "LuLaRoe"); individual defendants Mark A. Stidham and DeAnne S. Brady (a/k/a DeAnne Stidham) (collectively, "Individual Defendants"); and Does 1-30, inclusive. Corporate Defendants, Individual Defendants, and Does 1-30 are hereinafter collectively referred to as "Defendants."

## Introduction to the Case

1.     LuLaRoe is an unlawful, fraudulent pyramid scheme which preys on stay-at-home mothers, promising them they can generate substantial income while still being able to spend time at home with their families. LuLaRoe recruits these mothers to become "consultants." When joining, these recruited "consultants" believe that they will be able to sell LuLaRoe's various clothing items to a retail market.

2.     Since its inception in approximately 2013, the LuLaRoe pyramid scheme has generated billions of dollars in revenue, and at one point had approximately 80,000-100,000 consultants, all (including Plaintiffs defined below) who paid thousands of dollars for the initial opportunity to purchase from LuLaRoe clothing items for the purpose of selling such items.

3.     However, from its inception to at least the middle of 2017, LuLaRoe's consultants' primary income was derived from their ability to recruit other participants into the LuLaRoe scheme, rather than the sales of products to ultimate users.

4.     Defendants, at all times, had express knowledge that the LuLaRoe structure was an illegal pyramid scheme.

5.     As explained by the Ninth Circuit in *Webster v. Omnitrition Int'l*, 79 F.3d 776, 781 (9th Cir. 1996):

Pyramid schemes are said to be inherently fraudulent because they must eventually collapse. [Citation]. Like chain letters, pyramid schemes may make money for those at the top of the chain or pyramid, but "must end up disappointing those at the bottom who can find no recruits." [Citation].

6.     That is precisely what happened to Plaintiffs here, as well as thousands of other LuLaRoe consultants. Although putting in the effort, Plaintiffs, like other LuLaRoe consultants, failed because they were doomed from the start by the LuLaRoe plan that systematically rewarded recruiting consultants over retail sales of the product. This was a plan where LuLaRoe paid a significant portion of every dollar that Plaintiffs and other consultants paid for LuLaRoe products to others in the form of bonuses, regardless of the consultant's actual retail sales. This was a plan where millions were paid to those few at the top (primarily Mark Stidham and Deanne Brady), at the expense of the many at the bottom. LuLaRoe was started by Mark Stidham and Deanne Brady (who essentially sit at the very top of the pyramid) in order to enrich themselves through a calculated endless chain scheme. Upon information and belief, Stidham and Brady have earned hundreds of millions of dollars in profit for themselves on the backs of women who were seeking a legitimate business opportunity where they could earn income while spending more time with their families.

7.     Moreover, in order to further induce the consultants, including Plaintiffs, to continue purchasing substantial amounts of LuLaRoe inventory, Defendants made material misrepresentations and omissions, including, but not limited to, representing to consultants that as long as they "buy more" LuLaRoe products, they will "sell more" LuLaRoe products, representing that there is nothing to lose because LuLaRoe will honor a full 100% return policy (with free shipping and handling), and omitting that the LuLaRoe quality of product is declining and that the market is saturated, all while providing misleading income statements and retailer maps. All of these representations and omissions were

**CLASS ACTION COMPLAINT**

1   untrue, deceptive, and/or misleading.

2       8.      Consequently, all Defendants, through their contrivance, preparation,

3   set up, proposal, and operation of LuLaRoe have contrived, prepared, set up,

4   proposed, and operated an unlawful pyramid scheme in violation of the California

5   Penal Code § 327, which also forms the basis of a violation of the Unfair

6   Competition Law (Bus. & Prof. Code § 17200, *et seq.*) and the False Advertising

7   Law (Bus. & Prof. Code § 17500, *et seq.*).

8       9.      LuLaRoe's unlawful, fraudulent, and unfair scheme has affected tens

9   of thousands of consultants all across the country and has been recognized by

10  governmental agencies as an illegal scheme. For example, on or about January 23,

11  2019, the Washington Attorney General filed suit against Defendants in King

12  County Superior Court, alleging that LuLaRoe is an unlawful pyramid scheme.

13      10.     Additionally, Defendants, in violation of Civil Code § 1812.200, *et

14  seq.*, have operated an unlawful seller assisted marketing plan, which also

15  independently forms the basis of a violation of the Unfair Competition Law (Bus.

16  & Prof. Code § 17200, *et seq.*) and the False Advertising Law (Bus. & Prof. Code

17  § 17500, *et seq.*)

18      11.     Moreover, given Defendants' further misrepresentations and

19  omissions, as well as breaches of contract, Plaintiffs are further bringing breach of

20  contract, California Corporations Code violation, and RICO claims against

21  Defendants.

22                              **Parties**

23      12.     Plaintiff Tabitha Sperring is and at all relevant times was a resident

24  of Butler, Pennsylvania. Sperring became a LuLaRoe Consultant in or around

25  December 2016. She continued purchasing LuLaRoe product until approximately

26  May 2018. Sperring is a net loser when considering how much she spent on the

27  wholesale purchase of LuLaRoe products and how much she earned from selling

28  those items to the retail market and/or bonuses earned from recruiting. Sperring

has suffered substantial losses as a LuLaRoe consultant, finding herself in approximately $16,000.00 in credit card debt as a result of the LuLaRoe scheme. Sperring still has a substantial volume of inventory in her possession, for which she paid approximately $11,000. Sperring has suffered damages as a direct and proximate result of Defendants' misconduct and breaches described herein.

13.    Plaintiff Paislie Marchant was a resident of Greenville, South Carolina while she worked as a Consultant. She currently resides in Spartanburg, South Carolina. Marchant became a Consultant in or around December 2016. She continued purchasing LuLaRoe product until approximately December 2017. Marchant is a net loser when considering how much she spent on the wholesale purchase of LuLaRoe products and how much she earned from selling those items to the retail market and/or bonuses earned from recruiting.  Marchant has suffered substantial losses as a LuLaRoe consultant. Marchant currently has a substantial volume of LuLaRoe inventory in her possession, for which she paid approximately $10,000. Marchant has suffered damages as a direct and proximate result of Defendants' misconduct and breaches described herein.

14.    Plaintiff Sally Poston is and at all relevant times was a resident of Martinez, California. Poston became a LuLaRoe Consultant in or around February 2016. She continued purchasing LuLaRoe product until approximately October 2017. Poston is a net loser when considering how much she spent on the wholesale purchase of LuLaRoe products and how much she earned from selling those items to the retail market and/or bonuses earned from recruiting. Poston has lost approximately $22,000 as a result of the LuLaRoe scheme. Poston sold some of the product at a loss and gave away the rest. As to the items that Poston gave away, they had absolutely no market value, and were worthless. Poston has suffered damages as a direct and proximate result of Defendants' misconduct and breaches described herein.

15.    Corporate Defendant LLR, Inc. is a Wyoming corporation with its

**CLASS ACTION COMPLAINT**

1    principal place of business at 1375 Sampson Avenue, Corona, CA 92879.

2         16.    Corporate Defendant LuLaRoe, LLC, is a California limited liability

3    company with its principal place of business at 1375 Sampson Avenue, Corona,

4    CA 92879.

5         17.    Corporate Defendant Lennon Leasing, LLC, is a Wyoming limited

6    liability company with its principal place of business at 1375 Sampson Avenue,

7    Corona, CA 92879.

8         18.    Together, Corporate Defendants LLR, Inc., LuLaRoe, LLC, and

9    Lennon Leasing, LLC, comprise the LuLaRoe multi-level marketing (MLM)

10   apparel business (collectively "LuLaRoe").

11        19.    Corporate Defendants LLR, Inc., LuLaRoe, LLC, and Lennon

12   Leasing, LLC operated as a common enterprise while engaging in the deceptive

13   and unlawful practices alleged herein.

14        20.    Because LuLaRoe operated as a common enterprise, each entity is

15   jointly and severally liable for the acts and practices alleged.

16        21.    Individual Defendant Mark A. Stidham ("Stidham") is a California

17   resident and co-founder of LuLaRoe. He serves as President and CEO of LLR,

18   Inc., President of LuLaRoe, LLC, and President and Chief Executive Officer of

19   Lennon Leasing, LLC. Stidham, at all relevant times, lived in or around Corona,

20   California. At all times material to this Complaint, acting alone or in concert with

21   others, Defendant Stidham formulated, directed, controlled, had the authority to

22   control, or participated in the acts and practices set forth in this Complaint.

23        22.    Individual Defendant DeAnne Brady ("Brady") is a California

24   resident and co-founder of LuLaRoe. She serves as Secretary of LLR, Inc.; Chief

25   Executive Officer and Secretary of LuLaRoe, LLC, and Secretary of Lennon

26   Leasing, LLC. Brady, at all relevant times, lived in or around Corona, California.

27   At all times material to this Complaint, acting alone or in concert with others,

28   Brady formulated, directed, controlled, had the authority to control, or participated

**CLASS ACTION COMPLAINT**

1    in the acts and practices set forth in this Complaint.

2         23.    Plaintiffs are unaware of the true names, identities and capacities of

3    the Defendants sued herein as Does 1 through 30. When a name or capacity is

4    known, Plaintiffs will amend this Complaint to allege the true names and

5    capacities of Does 1 through 30.

6         24.    Plaintiffs are informed and believe, and thereupon allege, that each of

7    the Defendants sued herein as a DOE is legally responsible in some manner for the

8    events and happenings set forth herein and have proximately caused injuries and

9    damages to Plaintiffs as set forth below.

10        25.    Corporate Defendants, Individual Defendants, and DOES 1-30 will

11   hereinafter be collectively referred to as "Defendants."

12        26.    Defendants, and each of them, carried out their acts both directly

13   and/or through the acts and/or omissions of their agents, independent contractors,

14   servants and/or employees, who at all times were acting within the course and

15   scope of said agency, independent contractor agreement, and/or employment and

16   the acts and omissions of said agents, independent contractors, servants and/or

17   employees were authorized and ratified by all other said Defendants.

18        27.    Whenever this Complaint references the acts, omissions or

19   representations of any Defendant or Defendants, such allegation shall be deemed

20   to mean the act, omission or representation of those Defendants named in the

21   particular cause of action and each of them acting individually, jointly, and

22   severally and/or in concert with the other Defendant(s).

23        28.    To the extent that any of the claims alleged herein are barred by any

24   limitations rules, such claims are equitably tolled against Defendants and/or

25   Defendants are equitably estopped from asserting such limitation defense, given

26   Defendants ongoing misrepresentations and concealment of material fact alleged

27   herein.

28

**CLASS ACTION COMPLAINT**

**Jurisdiction and Venue**

29.   The Court has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the suit is a class action, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000, excluding interest and costs. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

30.   This Court has personal jurisdiction over Defendants because they had sufficient minimum contacts with California and within this District because, among other things, (i) the Individual Defendants reside in this District, (ii) the Corporate Defendants maintain their headquarters in this District, (iii) Defendants transact a substantial amount of business in California, including within this District, and (iv) Defendants have each purposefully availed themselves of the laws and markets of this District through the promotion, sale, and distribution of their products and seller assisted marketing plans from within California and within this District.

31.   Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial number of the acts, omissions, and transactions that established the claims of Plaintiffs and the Class occurred within this District. Defendants conducted business and solicited business relating to the endless chain scheme and unregistered seller assisted marketing plan from this District. Defendants transacted their affairs, resided within California and this District, and Defendants' wrongful acts occurred in this District.

**The Facts**

32.   LuLaRoe is MLM company founded by husband and wife couple, Individual Defendants Mark Stidham and DeAnne Brady in 2013, that promotes and sells colorfully patterned leggings, shirts, skirts, and dresses through a network of independent distributors called "Independent Fashion Consultants" (hereinafter "Consultants").

**CLASS ACTION COMPLAINT**

33.     LuLaRoe operated an unlawful pyramid scheme as evidenced by the Leadership Bonus Plan of its Independent Fashion Consultant Program ("LuLaRoe MLM").

### *Unlawful Compensation Structure*

34.     Any Consultant who signs up for the LuLaRoe MLM and pays the initial "onboarding" fee, which ranges from $2,000 to $9,000 (if not more) depending on the package, is eligible to participate in LuLaRoe's Leadership Bonus Plan. Each of the Plaintiffs paid such an "onboarding" fee to LuLaRoe. LuLaRoe's Leadership Bonus Plan gave Consultants a right to receive compensation entirely based on the recruitment of other persons as participants in the LuLaRoe MLM.

35.     LuLaRoe incentivized existing Consultants to recruit and sponsor new Consultants, and to encourage them and their recruits to purchase large amounts of inventory, by basing its bonus structure on the dollar amount of wholesale orders paid for, instead of on bona-fide retail sales to end-consumers. The Leadership Bonus Plan rewarded Consultants based on a percentage of the "Personal Volume" or "total of pieces" ordered for which payments are received in a calendar month" of their teams (or "T.E.A.M.s," LuLaRoe's acronym for "Together, Everyone, Achieves, More").

36.     LuLaRoe's Leadership Bonus Plan generally had four tiers of status, which Consultants qualified for based upon the number of inventory pieces purchased by a Consultant and her or his team (referred to as "Group Volume"), and the number and status of recruits in a Consultant's team.

37.     Any Consultant could participate in the Leadership Bonus plan by recruiting Consultants to be part of their teams. The Leadership Bonus Plan was generally structured as follows:

///

///

**CLASS ACTION COMPLAINT**

a. "Sponsors" were the lowest tier. Any Consultant could become a "Sponsor" by recruiting Consultants. Sponsors who met a minimum purchase requirement of 175 pieces per month were eligible for a 5% "override bonus on the Personal Volume (Payments Received)" of their sponsored Consultants.



b. "Trainers" were the second tier. A "Trainer" had to qualify with "250 pieces (100 of which must be generated by their personal orders), at least three Personally Sponsored Fashion Consultants, with a total of ten Fashion Consultants in their team and 1,750 Total Group pieces ordered and paid for." Trainers were eligible to earn "qualification points" to reduce their own personal purchase requirement. Trainers earned a 5% bonus on personally sponsored Consultants and a 3% bonus on the rest of the team's inventory purchases.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    c.    "Coaches" were the third tier. Coaches had to meet the

18 requirements of a Trainer and have at least three First Level Trainers. Coaches had

19 a minimum group volume of 1,750 pieces and were eligible for Trainer Leadership

20 Bonuses in addition to 1% of the Dollar Amount of any Second Level Leader's

21 Group Volume. Coaches were also eligible to receive leadership "points," which

22 could be cashed out or be used for other rewards such as the LuLaRoe Cruise.

23
24 ///
25 ///
26 ///
27
28

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17      d.      "Mentors" were the top tier. To qualify as a Mentor, a

18  Consultant had to meet the requirements of a Trainer and have at least three

19  leadership lines with coaches or above and three additional leadership lines. In

20  addition to the Coach Bonuses, Mentors were eligible to earn 1% of the Dollar

21  Amount of the total inventory purchases of all Third Level Leaders teams.

22
23
24  ///
25  ///
26  ///
27
28

**CLASS ACTION COMPLAINT**

38.     Income earned through the Leadership Bonus Plan significantly dwarfed retail profits for top consultants. At a Leadership Conference themed, "Be the Light" hosted at the Riverside Convention Center in California in January 2017, Defendant Brady asked Consultants to publicly state their last month's total retail sales and bonus checks. Consultants, at Defendant Brady's direction, announced the amounts of their monthly bonus checks, which ranged from $85,000 to $307,000. Compared to their monthly retail sales, which ranged from $12,000 to $25,000, it was clear that the primary opportunity for compensation was not through sale of LuLaRoe apparel, but bonuses earned through recruiting.

39.     When a Consultant would recruit (or sponsor) another Consultant, that lower level participant would be part of the recruiting Consultant's "downline" and the recruiting Consultant would be part of the lower level participant's

**CLASS ACTION COMPLAINT**

"upline." Defendants encouraged Consultants to build a team of "downline" Consultants underneath them who would purchase the LuLaRoe product as inventory for which the "upline" Consultants would earn bonuses or commissions from such "downline" inventory purchases.

40. Defendants' bonus plan was not tied to retail sales, but rather, was tied to the value of the inventory orders purchased by "downline" Consultants. The Bonus Plan made clear that consultants' compensation was based on inventory orders purchased by "downline" Consultants, and not based on retail sales.

41. Defendants incentivized "upline" Consultants to encourage the "downline" Consultants to purchase as much inventory as possible regardless of whether they were making any sales to end-users.

42. Defendants were able to sell substantial amounts of inventory to the "downline" Consultants, who had difficulty making money on their own sales to end-consumers. By pushing sales to Consultants and the recruitment of Consultants, the market became oversaturated with Consultants and products.

### *Sales and Marketing Activities*

43. Defendants' sales and marketing activities similarly emphasize recruiting individuals into the LuLaRoe MLM and encouraging inventory purchases in connection with their participation, rather bona fide retail sales. As stated in their marketing materials, "One of the greatest financial awards LuLaRoe has to offer Consultants is its proven Leadership Bonus Plan" where "you can earn significant income when you sponsor and build a strong T.E.A.M. that has consistently grown sales."

44. Defendants promote the LuLaRoe program through a variety of channels, including websites, social media, videos, testimonials, weekly webinars, conference calls, training calls, and live presentations and meetings at conferences. Defendants used a number of channels to promote the LuLaRoe Program, such as "opportunity calls," "opportunity events," "trainer calls," and "pop-ups."

**CLASS ACTION COMPLAINT**

LuLaRoe's core management team, including Defendants Stidham and Brady plan, host, and execute "opportunity calls," "opportunity events," and "trainer calls."

45.     "Opportunity events" are events designed to recruit new Consultants and motivate existing Consultants to do the same, typically hosted in hotel ballrooms, conference rooms, or convention centers around the country. LuLaRoe annually hosted a conference called VISION for active Consultants. Individual Defendants often spoke at "opportunity events."

46.     "Opportunity calls," often hosted by Defendant Brady, are weekly conference calls to promote and market the LuLaRoe MLM to potential recruits.

47.     "Trainer calls" are calls designed to entice and train consultants to grow their teams through the Leadership Bonus Program.

48.     "Pop-ups" are events hosted by Consultants, where Consultants are encouraged to recruit "Hostesses" in order to help them sell LuLaRoe merchandise. LuLaRoe encourages Consultants to reward "Hostesses" with free LuLaRoe merchandise, and at each "pop-up," recruit additional "Hostesses" for additional "pop-ups."

49.     Through each of these channels, Defendants encouraged consumers, including Plaintiffs, to become LuLaRoe Consultants and to recruit others, including friends and family members, to do the same.

50.     In trainings, Defendants represent that a key to success is "Buy more, sell more." This "buy more, sell more" was a practice done to encourage inventory loading, by inducing Consultants to purchase as much inventory as possible (profiting those at the top—i.e., Stidham and Brady).

51.     Defendants further emphasize the key to success is growing "Group Volume" to receive large rewards through the Leadership Bonus Plan.

52.     Defendants' goal was to have the Consultants purchase more product, rather than focusing on the actual end sales to consumers. Defendants further encouraged Consultants to continue buying more and more product,

encouraging them to take 100% of all profits earned from sales to purchase more product.

### *Defendants' Business Opportunity and Income Claims*

53.     In order to recruit Consultants to the LuLaRoe MLM, Defendants assert throughout their sales and marketing activities that consumers can earn significant rewards through the LuLaRoe MLM, and that Consultants' income potential is significant.

54.     Defendants repeatedly tout that the LuLaRoe MLM offers anyone an easy path to financial freedom and independence with part-time work. Print materials for recruiting distributed by LuLaRoe state: "MAKE A FULL-TIME INCOME DOING PART TIME WORK. BECOME A LULAROE INDEPENDENT BUSINESS OWNER" and "WANT TO EARN FULL-TIME INCOME FOR PART-TIME WORK? ASK ME HOW?" LuLaRoe's document titled "How Long to Pay Back My Initial Investment" said that LuLaRoe is a "simple business" in which Consultants can "earn full-time income for part-timework." Defendants claimed that "[w]ith LuLaRoe, in a matter of a few months, you can completely repay your initial investment and have money in the bank." LuLaRoe encouraged consultants to frame and hang these print materials at "pop-up parties" and distribute these materials to potential recruits. At an opportunity event in 2015, Defendant Stidham also made similar lifestyle claims of "full-time income on part-time work":

> We started this business on the premise that you could make a full-time income on part-time, part-time work, alright? I always boiled that down to this, a party takes about 5 hours. Uh, we say it takes 5 hours because the party itself takes about an hour and half because you got to set it up. You take it down. You gotta call and prep the hostess. You have to organize your inventory. So, you have lots of ancillary … activities that goes with the party. So … I think it's very generous to say you have 5 hours for a party. Now, can you do 4 parties in a week? 4 parties times 5 hours is 20 hours; 20 hours in the week is definitely part time work. Now what do you make if you do 4

**CLASS ACTION COMPLAINT**

parties in a week? Average party sales are about 25 pieces. Okay, so 4 parties in a week equals 100 pieces sold in a week. There's are 52 weeks in a year, but we're gonna give you two weeks off. So 50 weeks take 100 pieces, that's 5000 pieces sold in a year. Average profit is 12 to 15 dollars per item, that's 60 to 75 thousand dollars a year working 20 hours a week."

55.     Defendant Brady made lifestyle and income claims during "opportunity calls" designed to recruit new Consultants, "opportunity events" designed to motivate Consultants to recruit others, and in webinars put on by existing Consultants:

a.     "You are going to make about three to five-thousand on average, I'm saying on average, you know, you gonna, you're going to have to get yourself going. … Your business will start to grow and it will grow and grow and grow … On average our consultants are paying their debt back … anywhere from 2 weeks to 2 months, depending on how much you want to commit to. …"

b.     "In fact, today, I was making calls. I reached out to 25 retailers that are selling an average of 12 to 15, [correct self] 10 to 15 thousand a month, I mean is that, is that comprehensible or what, it's amazing, to make that kind of money, doing it part-time, being a stay at home mom. …"

c.     "I mean I could blow your, your mind away by telling you that we have over 100 people that make a lot of money, like between 50 thousand to 500 thousand dollars a month, and I'm not lying."

d.     "What really affects me is when women call me and say, 'my husband just lost his job, so I guess I'm it.' And they say, 'do you think I can do it DeAnne?' And I get to get my pom-poms out, and I say, 'But don't you see this is an answer! This is easy! This is fun! This is something you guys can do together and he can watch the kids while you go and do parties.'"

e.     "This is a business that is going to bring in a lot of money for you, a lot of money, I mean a lot. I'm going to say that over."

**CLASS ACTION COMPLAINT**

56.     In a document titled "LuLaRoe Fashion Consultant Business Overview," Defendants represented that "at a Pop-Up Boutique we see an average sales volume of around 20 items, with an average profit of $15 per item."

***Defendants' Training Materials Emphasized Recruiting Over Bona Fide Retail Sales***

57.     LuLaRoe encouraged Consultants to flaunt their success in order to recruit others. Training materials state:

a.     "By sharing your success stories with others around you, you allow that success to grow."

b.     "SHARE THE OPPORTUNITY. LuLaRoe believes that anyone, anywhere has the ability to share the amazing opportunity LuLaRoe has to offer! … One direct way to ensure that your LuLaRoe business will succeed is by growing your clientele and your potential T.E.A.M. People are intrigued and excited by another's personal triumphs! Share with those interested about your success and how they too can have a business of their own and the freedom that comes with it."

58.     Although it is against LuLaRoe's written Policies and Procedures for Consultants to make income claims; Defendants encourage Consultants to make income and lifestyle claims and flaunt their success in order to recruit additional Consultants. At several Opportunity Events, Defendant Brady led panels and asked top Consultants to present their Leadership bonus checks publicly, which were much larger than the amount of profits earned from retail sales. On July 13, 2015, Defendants Stidham and Brady publicly presented a Consultant and her husband an oversized bonus check at VISION Leadership Conference in the amount of $1,425,701.18, creating the impression that other Consultants could also achieve such income through the LuLaRoe Program. Defendants Stidham and Brady posed with the Consultants for a photo with the check, which was then posted on a Consultant's blog site designed to recruit additional Consultants.

**CLASS ACTION COMPLAINT**

***Failure to Disclose Material Terms***

59.     Prospective Consultants, including Plaintiffs, relied on information publicly available on LuLaRoe's website in evaluating whether the LuLaRoe MLM will be a worthwhile business opportunity. However, LuLaRoe fails to disclose accurate information material to their decision.

60.     For example, LuLaRoe on its website has published annual disclosure statements on its website since 2014. The figures contained in the company's disclosure statements do not show the whole picture and are misleading. Among other things, the disclosure statements only take into account "active" Consultants who have met minimum purchase thresholds and omit participants who fared worse. Additionally, LuLaRoe never published a 2017 Income Statement, leaving a 2016 Income Statement on its website, which was not reflective of 2017 when business declined. As such, LuLaRoe misled prospective Consultants who evaluated whether to join the LuLaRoe MLM in 2017.

61.     Likewise, this intentional failure to publish the 2017 Income Statements and leave up the 2016 Income Statements (which was not reflective of 2017 when business declined) misled Consultants into purchasing more products.

62.     LuLaRoe's "Retailer Map," which is published on its website, misrepresents the number of active Consultants in a particular geographic location. While LuLaRoe maintains data and statistics on the location and number of active and inactive retailers, the map understates the number of Consultants, misleading potential Consultants about the level of saturation of active Consultants in a location. The map informs prospective Consultants about market saturation, which is material information about the potential business opportunity. Instead of updating the map with accurate information, LuLaRoe added a disclaimer to the map in 2018, the efficacy of which was diluted by stating that it "cannot and does not guarantee the accuracy of the Retailer Map" in non-conspicuous fine grey print.

**CLASS ACTION COMPLAINT**

### *Unfair and Deceptive Practices Encouraging Inventory Loading*

63.     Defendants also engage in a number of practices that encourage Consultants to purchase significant wholesale inventory. Defendants engaged in unfair and deceptive business practices that encourage inventory loading. Such practices include educating Consultants that a key to success is maintaining significant inventory; not permitting Consultants to pick the pattern or size of apparel included in inventory purchases (and providing primarily unpopular patterns); and marketing limited edition "unicorn" pieces to create a "frenzy" of inventory ordering. LuLaRoe intentionally only placed a few popular items within each shipment.

64.     Defendants deceptively trained Consultants that the key to success is "Buy more, sell more." In training materials, LuLaRoe encourages Consultants to invest all profits from retail sales back into inventory purchases:

> Having a wide selection will lead to more customer engagement and bigger sales. It is crucial that you carry a significant number of pieces in every size before moving onto other styles. We have found that our Consultants who carry several hundred items in their inventory have the highest rate of success. Of course there are no set-in-stone rules, and you may proceed at your own pace, but we have learned that abundant inventory often creates abundant sales!

65.     Defendant Brady stated in a November 14, 2016 mentor call:

> The way this business was created, was you have the merchandise, you put it before people and you sell it and you have money in your bank account. That is how this business goes and the more investment that you put into your business, you treating it like a business, the first 90 days to 120 days, YOU DO NOT SPEND YOUR MONEY. Sorry, you can buy an ice cream cone, or a diet coke or cup of coffee and gas, you pour everything back in your business .... well this kind of business is driven by the more you invest in your business, the more you have, the more you are going to sell it. So I want to reach out to you and let you know and give you permission that this is a business that is going to bring in a lot of money for you, A LOT, I mean A LOT, I'm going to say that over.

**CLASS ACTION COMPLAINT**

66.     Despite encouraging Consultants to maintain a large variety of inventory, LuLaRoe does not permit Consultants to select the pattern or size of the merchandise ordered. At least 33 pieces of Inventory must be purchased from LuLaRoe for each shipment. Consultants may not specify the size or print of an inventory order. Thus, in order to obtain merchandise of a particular size or print, such as a particularly desirable "unicorn" piece, Consultants were required to "to buy, to buy, to buy," but could only hope to receive specific desirable sizes or prints.

### *Exiting Consultant Refund Policy*

67.     As part of its "Policies and Procedures," LuLaRoe has an official inventory buy back policy for exiting consultants. Section 3.16.3 permits retailers to receive "90% of the net cost of the original purchase price(s)" upon "cancellation of an Independent Fashion Consultant's Agreements." LuLaRoe's "Returns on Cancellation of the Agreement" repurchase policy assured prospective Consultants that they could recoup most of their investment in the LuLaRoe Program if the opportunity did not work out for them.

68.     However, LuLaRoe implemented a very complex process for initiating a refund, which it did not clearly disclose to Consultants. While the process has varied over time, currently, the process is as follows: In order to obtain a refund, a Consultant must log into "Build," LuLaRoe's online portal, and click the "cancel my business" button. Then, LuLaRoe sends "formstacks" for Consultants to list inventory they plan to return for a refund. After a Consultant submits her or his formstacks, LuLaRoe sends Consultants a confirmation of the refund amount they are eligible for, which according to their policies and procedures should be 90% of the wholesale price of inventory purchased within the last year, less any bonus earned through the Leadership Bonus Plan. If the refund offered is satisfactory to the Consultant, the Consultant must pay for shipping, and return her or his merchandise to LuLaRoe. After LuLaRoe

inventories the merchandise and deems it resalable, LuLaRoe issues a refund check. This complex process was not disclosed to Consultants, including class members, when they agreed to become consultants.

69.     Rather, when deciding to be a LuLaRoe consultant, Plaintiffs, including class members, were led to believe that they will receive a 90% refund upon returning all LuLaRoe items. Plaintiffs and other class members believed that there was low risk in proceeding to sell LuLaRoe products because of the 90% refund policy. Thus, if a consultant invested $5,000 but was unable to sell any product, that consultant believed that upon return, she would receive $4,500, only risking $500.

70.     On April 25, 2017, in order to induce more purchases of LuLaRoe product, LuLaRoe announced it would be changing its 90% policy to 100%, and committed to paying for return shipping. LuLaRoe made representations that the revised 100% policy would not go away.

71.     On June 30, 2017, LuLaRoe deceptively posted a "Home Office Update" on LuLaRoe's online portal "Build." "This policy does not have an expiration date, nor does it have a required timeframe in which the product should have been purchased in." However, without any advance notice to Consultants, LuLaRoe announced on September 13, 2017, that it would no longer honor the 100% refund policy. The promise of a 100% return policy induced Consultants, including Plaintiffs, to purchase more product.

72.     Also, LuLaRoe sent emails to Consultants, including Plaintiffs, stating:

> INDEPENDENT FASHION RETAILERS, WHO WISH TO CANCEL THEIR RETAILER AGREEMENT, WILL BE REFUNDED 100% OF THE WHOLESALE AMOUNT. How AWESOME is that? On top of that, LuLaRoe will also cover your shipping by sending you shipping labels!

(Emphasis in original).

**CLASS ACTION COMPLAINT**

73.     The promise to provide a 100% refund induced Consultants, including Plaintiffs, to purchase more LuLaRoe inventory. Consultants, including Plaintiffs, in conjunction with the representation that buying more will lead to selling more, purchased more product, comfortable that if they are unable to sell the product, they can return for a full refund.

74.     However, at the time that Defendants made such representation for a 100% return, they did not intend to actually honor such 100% return policy.

75.     Following the announcement, many retailers who had started the exit process experienced issues with their refunds, including a lack of response to initiating refunds, delays in sending formstacks, miscalculations in the amount of refunds owed (which became known among Consultants as "LuLaMath"), and significantly delayed or non-payment of refunds.

76.     Word spread quickly amongst LuLaRoe Consultants about LuLaRoe's failure to honor the repurchase representation. As a result of LuLaRoe's failure to honor its written repurchase policy, many Consultants, including Plaintiffs, did not send in their merchandise because they believed LuLaRoe would not refund them the appropriate amount, if at all. Many Consultants, like Plaintiffs, were forced to attempt to mitigate their losses through other means, such as G.O.O.B. sales, consignment thrift shops, or simply giving away merchandise at a loss. Many others are still holding onto boxes of unsaleable inventory. LuLaRoe's items that many of the Consultants simply gave away are worthless and could not be sold.

77.     Plaintiffs are informed and believe that many LuLaRoe consultants that did submit their merchandise to LuLaRoe are still waiting months, if not more than a year, to receive their refund check.

78.     In sum, LuLaRoe's business model was a pyramid scheme. The primary business opportunity in the LuLaRoe MLM was its Leadership Bonus Plan, which rewarded compensation solely based on recruiting and inventory

**CLASS ACTION COMPLAINT**

purchases.

79.     Further, Defendants' marketing and sales activities, misleading income and lifestyle claims, emphasis on recruiting and inventory purchases over emphasis on sales to consumers outside the LuLaRoe organization, arid inventory loading practices ensured that the primary business opportunity with LuLaRoe was through recruitment.

80.     LuLaRoe experienced exponential growth, creating substantial income for the individual Defendants. Defendant Stidham announced in February 2017, that LuLaRoe had over 70,000 Consultants nationwide and that by August 10, 2017, LuLaRoe had achieved "over $1.5 Billion in retail sales for 2017 so far this year."

81.     As a result of Defendants' business and marketing practices that encouraged inventory loading, LuLaRoe faced so much demand for inventory that it could not keep up with orders. In early 2017, the quality of LuLaRoe's merchandise declined, with Consultants receiving mis-sized merchandise or low-quality merchandise, such as leggings with mismatched pant leg lengths or merchandise that quickly developed holes.

82.     LuLaRoe also provided items that were improperly stored outside and were unsaleable when received by the Consultants. LuLaRoe failed to disclose to Consultants that the quality was declining and that the merchandise was improperly stored.

83.     Even with these production and quality problems, LuLaRoe continued encouraging inventory loading.

84.     Defendants market the LuLaRoe MLM as a transformational, empowering opportunity to achieve dreams and achieve financial freedom while providing a flexible and part time alternative to traditional employment. Defendants' marketing prominently features testimonials of independent, stylish, affluent women who have it all: a successful career, flexibility and time to spend

with their children, and a harmonious marriage. LuLaRoe marketing materials claim that joining the LuLaRoe Program can "change lives," "build confidence," and offer Consultants the opportunity to "create freedom, serve others and strengthen families." In reality, LuLaRoe's pyramid scheme business model and compensation plan, and its corresponding marketing activities dictated that during any particular time, a majority of Consultants, including Plaintiffs, lost money.

### *Plaintiffs Would Not Have Joined LuLaRoe and/or Purchased Additional LuLaRoe Product Had They Known the Truth*

85.     Each of the Plaintiffs was exposed to Defendants' direct and indirect representations and/or omissions regarding, among other things, that they can generate substantial income while still being able to spend time with their families (e.g., full time income working part-time hours).

86.     Each of the Plaintiffs, based on some or all of the aforementioned representations and omissions, became LuLaRoe consultants, paying the "onboarding" fee.

87.     In truth, LuLaRoe Consultants were not likely to earn substantial income.

88.     Each of the Plaintiffs was also exposed to Defendants' direct and indirect representations and/or omissions regarding, among other things, (a) to "buy more, sell more" by taking profits from any sales and investing it into more LuLaRoe product, (b) that LuLaRoe will honor a 100% return policy, (c) the income statements made on LuLaRoe's website, (d) the misleading retailer map on LuLaRoe's website, (e) the saturation of the Consultant market, (f) the decline in the quality of the products, and (g) that Defendants intentionally only placed a few popular items within each shipment.

89.     Each of the Plaintiffs, based on some or all of the aforementioned representations and omissions, continued purchasing LuLaRoe products.

90.     In truth, LuLaRoe did not provide a 100% full refund. In truth, the

**CLASS ACTION COMPLAINT**

market was extremely saturated with Consultants. In truth, the quality of the products was declining. In truth, the majority of the items sold by LuLaRoe to Consultants were not saleable. Consultants, including Plaintiffs, were unaware of these facts when purchasing more and more inventory.

### ***Class Action Allegations***

91.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23.

92.     Plaintiffs seek to represent a nationwide class defined as follows:

"All LuLaRoe Consultants in the United States from January 1, 2013 until the present that lost money as LuLaRoe Consultants."

93.     Excluded from the class are the Defendants, and their officers and directors, family members, legal representatives, heirs, successors or assigns. Further excluded from the class are each of the Plaintiffs from *Lemberg, et al. v. LuLaRoe, LLC, et al.*, Case No. 5:17-cv-02102-AB-SHK (C.D. Cal.).

94.     Plaintiffs seek relief for themselves and all members of the class.

95.     While the exact number of members in the Class are unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants. It is estimated that the members of the Class exceed 25,000 individuals. Therefore, the Class is so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

96.     There are questions of law and/or fact common to the class including but not limited to:

a.     Whether Defendants are operating an endless chain;

b.     Whether Consultants paid money to Defendants for (1) the right to sell a product and (2) the right to receive, in return for recruiting others, rewards which were unrelated to the sale of the product to retail consumers;

c.     Whether Defendants have met the factors set forth in *In re*

**CLASS ACTION COMPLAINT**

*Amway Corp.*, 93 F.T.C. 618 (1979): (1) upline distributors are required to buy back from any person they recruited any saleable, unsold inventory upon the recruit's leaving the enterprise; (2) every participant is required to sell at wholesale or retail at least 70% of the products bought in a given month to receive a bonus that month; and (3) to receive a bonus, each participant was required to submit proof of retail sales made to at least ten different consumers;

       d.    Whether Defendants omitted to inform Plaintiffs and the Class that they were entering into an illegal scheme where an overwhelming number of participants lose money;

       e.    Whether it was deceptive to represent to Consultants that if they "buy more" they will "sell more;"

       f.    Whether it was fraudulent and unfair to promise Consultants that Defendants will honor a 100% return policy which was not honored;

       g.    Whether Defendants acted deceptively and/or unfairly by failing to inform Consultants about the decline in the quality of the products and the improper storage of clothing;

       h.    Whether it was deceptive and/or unfair for Defendants to intentionally include only a few popular items in each shipment;

       i.    Whether it was deceptive and/or unfair to omit a 2017 income statement from the website and provide only a 2016 income statement;

       j.    Whether Defendants' conduct constitutes an unlawful, unfair and/or deceptive trade practice under California state law;

       k.    Whether Defendants' conduct constitutes unfair competition under California state law;

       l.    Whether Defendants' conduct constitutes false advertising under California state law; and

       m.    Whether LuLaRoe violated rules regarding seller assisted marketing plans under California law.

**CLASS ACTION COMPLAINT**

97.     These and other questions of law and/or fact are common to the class and predominate over any question affecting only individual class members.

98.     Plaintiffs' claims are typical of the claims of the class in that, among other things, Plaintiffs were Consultants for Defendants and lost money.

99.     Plaintiffs will fairly and adequately represent the interests of the class. Plaintiffs' claims are typical of those of the class. Plaintiffs' interests are fully aligned with those of the class. And Plaintiffs have retained counsel experienced and skilled in complex class action litigation.

100.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged, because such treatment will allow many similarly-situated persons to pursue their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

101.    Plaintiffs know of no difficulty likely to be encountered in the management that would preclude its maintenance as a class action.

### ***The ADR Provisions That Plaintiffs are Subject to are Unconscionable***

102.    Plaintiffs are aware that various Plaintiffs in the *Lemberg, et al. v. LuLaRoe, LLC, et al.*, Case No. 5:17-cv-02102-AB-SHK (C.D. Cal.) action filed similar claims against Defendants. Plaintiffs are further aware that Defendants successfully compelled such claims to arbitration. However, there are key arguments and authorities that the parties did not address during that motion to compel arbitration briefing.

///
///
///

**CLASS ACTION COMPLAINT**

## <u>CLAIMS BASED ON VIOLATION OF ENDLESS CHAIN SCHEME</u>

### FIRST CLAIM FOR RELIEF

### (ENDLESS CHAIN SCHEME; California Penal Code §327

### and Section 1689.2 of the California Civil Code)

### Against All Defendants

### (On Behalf of the Class)

103.    Plaintiffs reallege and incorporate all allegations above, save and except any allegation that can be interpreted to allege any violation of any duty, obligation, or term or condition, imposed by any LuLaRoe Independent Consultant Program Application & Agreement, LuLaRoe's policies and procedures, or LuLaRoe compensation plan.

104.    Penal Code § 327 provides:

> Every person who contrives, prepares, sets up, proposes, or operates any endless chain is guilty of a public offense ….

> As used in this section, an "endless chain" means any scheme for the disposal or distribution of property whereby a participant pays a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive compensation when a person introduced by the participant introduces a new participant. Compensation, as used in this section, does not mean or include payment based upon sales made to persons who are not participants in the scheme and who are not purchasing in order to participate in the scheme.

105.    Section 1689.2 of the California Civil Code provides:

> A participant in an endless chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract upon which the scheme is based, and may recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme.

106.    Here, each Defendant contrived, prepared, set up, proposed and/or operated an endless chain scheme.

**CLASS ACTION COMPLAINT**

107.   Plaintiffs and the class have suffered an injury in fact and have lost money or property because of Defendants' operation of an endless chain, business acts, omissions, and practices.

108.   As a matter of law, Defendants misrepresentations and material omissions, knowledge, and intent follow from the inherently fraudulent nature of the fact that they were operating a pyramid scheme. *See Webster v. Omnitrition Int'l*, 79 F.3d 776, 788 (9th Cir. 1996).

109.   Moreover, there is an inherent deceptiveness in endless chain schemes where the fact that the "futility" of the plan is not "apparent to the consumer participant." *Id.*

110.   Here, the futility was not apparent to the Plaintiffs nor any of the other class member Consultants.

111.   Moreover, Defendants do not have in place the following rules (and certainly do not enforce the following rules): (1) upline distributors are required to buy back from any person they recruited any saleable, unsold inventory upon the recruit's leaving the enterprise; (2) every participant is required to sell at wholesale or retail at least 70% of the products bought in a given month to receive a bonus that month; and (3) to receive a bonus, each participant was required to submit proof of retail sales made to at least ten different consumers.

112.   Plaintiffs and the class are entitled to:

a.   Rescind the contract upon which the scheme is based and recover all consideration paid under the scheme, less any amounts paid or consideration provided to the participant under the scheme, or, in the alternative, any other rescission-like remedy appropriate under the circumstances;

b.   Restitution, compensatory and consequential damages (where not inconsistent with their request for rescission or restitution); and

c.   Attorneys' fees, costs, pre- and post-judgment interest.

**CLASS ACTION COMPLAINT**

## SECOND CLAIM FOR RELIEF

### (Unfair and Deceptive Practices Claims Under

### Cal. Bus, & Prof. Code § 17200, *et seq.*)

### Against All Defendants

### (On Behalf of the Class)

113.    Plaintiffs reallege and incorporate all allegations above, save and except any allegation that can be interpreted to allege any violation of any duty, obligation, or term or condition, imposed by any LuLaRoe Independent Consultant Program Application & Agreement, LuLaRoe's policies and procedures, or LuLaRoe compensation plan.

114.    Defendants have engaged in constant unlawful, fraudulent, and unfair business acts or practices, and unfair, deceptive, false and misleading advertising within the meaning of the California Business and Professions Code § 17200, *et seq.* The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized thousands of Consultants.

### Defendants' Sales and Marketing Plan was Unlawful

115.    Under California Business and Professions Code § 17200, an "unlawful" business practice is one that violates California law.

116.    Defendants' business practices are unlawful under § 17200 because they constitute an illegal "endless chain" as defined under, and prohibited by, California Penal Code § 327.

117.    And, Defendants' business practices are unlawful under §17200 because they violate §17500 *et seq.*, as alleged in the Third Claim.

### Defendants' Sales and Marketing Plan is Fraudulent

118.    Under California Business and Professions Code § 17200, a "fraudulent" business practice is one that is likely to deceive the public.

119.    First, as detailed herein, Defendants promoted participation in their endless chain, which has a compensation program based on payments to

31

participants for the purchase of product by participants, not the retail sale of products or services.

120. Defendants made numerous misleading representations about the business opportunity available to the Consultants and the income that a Consultant can realize by becoming a Consultant and participating in the scheme.

121. Defendants knew, or should have known, that the representations about the business opportunity presented to Consultants were misleading in nature.

122. As a direct result of Defendants' fraudulent representations and omissions regarding their endless chain described herein, Defendants wrongly acquired money from Plaintiffs and the members of the classes.

123. Furthermore, Defendants fraudulently misrepresented facts about the amount of money that a Consultant would earn, including false statements about Defendants' consultants' historic sales volume and profitability and the amount of time in which Consultants recoup their investment and become profitable.

124. Each of the named Plaintiffs actually relied on the alleged fraudulent conduct. Had any of the named Plaintiffs known the truth behind Defendants misrepresentations and/or material omissions, none of the Plaintiffs would have become Consultants.

125. Defendants knew that Plaintiffs and the class would reasonably rely on their representations and material omissions, which would cause the Plaintiffs and the class to join the fraudulent scheme and purchase the products, and Plaintiffs did in fact reasonably rely on such representations and omissions by joining the scheme and purchasing products.

126. The fraudulent acts, representations, and omissions described herein were material not only to Plaintiffs and the class, but also to reasonable persons.

### **Defendants' Sales and Marketing Plan is Unfair**

127. Under California Business and Professions Code § 17200, a business practice is "unfair" if it violates established public policy or if it is immoral,

**CLASS ACTION COMPLAINT**

unethical, oppressive or unscrupulous and causes injury which outweighs its benefits.

128.   For the reasons set forth herein and above, Defendants' promotion and operation of an unlawful and fraudulent endless chain, and their fraudulent representations and omissions regarding the business opportunity for Consultants was unethical, oppressive, and unscrupulous in that Defendants had been duping Plaintiffs and the class out hundreds of millions of dollars.

129.   Defendants' actions have few, if any, benefits. Thus, the injury caused to Plaintiffs and the class easily and dramatically outweighs the benefits, if any.

130.   Defendants should be made to disgorge all ill-gotten gains and return to Plaintiffs and the class all wrongfully taken amounts.

131.   Finally, Defendants' unlawful, fraudulent and unfair acts and omissions will not be completely and finally stopped without orders of an injunctive nature. Under California Business and Professions Code section 17203, Plaintiffs and the class seek a judicial order of an equitable nature against all Defendants, including, but not limited to, an order declaring such practices as complained of to be unlawful, fraudulent and unfair, and enjoining them from further undertaking any of the unlawful, fraudulent and unfair acts or omissions described herein.

**THIRD CLAIM FOR RELIEF**

**False Advertising**

**(California Business and Professions Code § 17500, *et seq*.)**

**Against All Defendants**

**(On Behalf of the Class)**

132.   Plaintiffs reallege and incorporate all allegations above, save and except any allegation that can be interpreted to allege any violation of any duty, obligation, or term or condition, imposed by any LuLaRoe Independent Consultant

Program Application & Agreement, LuLaRoe's policies and procedures, or LuLaRoe compensation plan.

133. Defendants' business acts, false advertisements and materially misleading omissions constitute false advertising, in violation of the California Business and Professions Code § 17500, *et seq.* Each of the Defendants are either a person, firm, corporation, association, or an employee thereof, that, with intent, directly, or indirectly, in order to dispose of property, induced the class, including Plaintiffs, to become Consultants, based on untrue, and misleading statements regarding whether it was selling and/or promoting a seller assisted marketing plan. Defendants knew that its representations and/or omissions were false and/or misleading.

134. As explained in *Webster*, "the operation and promotion of an endless chain scheme within the meaning of Penal Code § 327 is an inherently deceptive marketing practice, actionable under §17500." *Webster*, 79 F.3d at 788.

**FOURTH CLAIM FOR RELIEF**

**Violation of California Corporations Code**

**Against all Defendants**

**(On Behalf of the Class)**

135. Plaintiffs reallege and incorporate all allegations above, save and except any allegation that can be interpreted to allege any violation of any duty, obligation, or term or condition, imposed by any LuLaRoe Independent Consultant Program Application & Agreement, LuLaRoe's policies and procedures, or LuLaRoe compensation plan.

136. California Corporations Code §25401 provides that it is unlawful for any person to offer to sell or sell a security in California by means of any written or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which the statements were made, not misleading.

34

**CLASS ACTION COMPLAINT**

137. The clothing items that the Corporate Defendants sold to Consultants, including Plaintiffs, were securities.

138. Defendants, by engaging in the conduct described above, in connection with the purchase or sale of a security, by the use of written or oral communications made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances, under which they were made, accurate and not misleading. Among other things, Corporate Defendants failed to explain that the investment in LuLaRoe clothing was an illegal pyramid scheme.

139. To the extent any of the Defendants did not directly offer or sell the security, such Defendants are still liable because they either control the seller of the security, are officers or directors of the seller of the security, and/or are employees that materially aided in the seller's misrepresentations/omissions. Cal. Corp. Code § 25504 provides that "[e]very person who directly or indirectly controls a person liable under 25501 [providing remedy for violation of § 25401] … every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

140. Moreover, California Corporations Code § 25504.1 provides: "Any person who materially assists in any violation of section 25110, 25120, 25130, 25133, or 25401…with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation." Thus, to the extent any Defendant did not directly sell any of the securities, such Defendants

are alternatively liable under § 25504.1 because they materially assisted the selling Defendants' with misrepresentations/omissions as alleged herein, with the intent to deceive or defraud.

## CLAIMS BASED ON VIOLATION THE CALIFORNIA SELLER ASSISTED MARKETING PLAN ACT

### FIFTH CLAIM FOR RELIEF

**(The California Seller Assisted Marketing Plan Act §§ 1812.200, *et seq.*)**

**Against Defendants**

**(On Behalf of the Class)**

141.    Plaintiffs reallege and incorporate paragraphs 1-102 above.

142.    Defendants' seller assisted marketing plan meets the definitions of a "seller assisted marketing plan" under the California Seller Assisted Marketing Plan Act, Cal. Civ. Code §§ 1812.200, *et seq.* and did not qualify for any exemptions thereunder.

143.    Under the California Seller Assisted Marketing Plan Act, ("California SAMP Act"), California requires that seller assisted marketing plans that operate from within California that offer business opportunities to the general public to: (1) register with the California Attorney General's Office; (2) to provide significant disclosure statements to potential buyers of the marketing plan being sold prior to signing any contracts; and (3) to provide the buyers of the marketing plan specific contractual rights after a purchase has been made. *See* Cal. Civ. Code §§ 1812.200, *et seq.*

144.    Here, Defendants operated within California, offering business opportunities to the general public, but willfully and intentionally failed to (1) register with the California Attorney General's Office; (2) provide the significant disclosures to prospective Consultants as required by the California SAMP Act; and (3) provide the Consultants with the buyer-specific contractual rights required by the California SAMP Act.

**CLASS ACTION COMPLAINT**

145.   Defendants were cognizant of the SAMP Act and its rules, referencing the act within its own written materials.

146.   In a webinar, Mark Stidham described LuLaRoe as follows:

> It is one of the best business opportunities that you can use to leverage that hard work, time and effort to get a return on your investment. We have built this business - we have designed the compensation plan, we designed the product, we designed the sales method, all of it designed to create an opportunity for you to make extra money.

147.   Defendants have sold the LuLaRoe marketing plan to over 80,000 Consultants nationwide, including Plaintiffs. Plaintiffs and the class purchased the marketing plan in connection with starting their own LuLaRoe business. Plaintiffs continued purchasing LuLaRoe marketing plans.

148.   The Defendants' seller assisted marketing plan involved Defendants' sale or lease of product, equipment, supplies, and services for initial payment exceeding $500 to the Plaintiffs and the Class in connection with or incidental to beginning, maintaining, or operating their respective LuLaRoe businesses.

149.   From within California, Defendants individually and by and through their agents advertised and otherwise solicited the purchase or lease of product, equipment, supplies, and/or services to the Plaintiffs and the Class as alleged above.

150.   Defendants individually and through its/their agents represented that: (1) Plaintiffs and the Class were likely to earn an amount in excess of the initial payment; (2) there is a market for LuLaRoe products that were purchased by the Plaintiffs and the Class; and (3) LuLaRoe would, in whole or in part, buy back or is likely to buy back the LuLaRoe product initially sold to the Plaintiffs and the Class.

151.   Defendants also represented or implied that they have sold the LuLaRoe seller assisted marketing plan to at least five other individuals in the

previous 24 months, and intend to sell the LuLaRoe seller assisted marketing plan to at least five individuals in the next 12 months.

152.    Defendants failed to provide Plaintiffs and other Consultants with, among other things, the following information which would have been important to them as to whether to invest and continue investing in the LuLaRoe seller assisted marketing plan: (1) retail sales statistics for Consultants, (2) LuLaRoe financials, (3) earnings by the Stidhams, and (4) state of the LuLaRoe retail market

153.    Defendants are sellers of "Seller Assisted Marketing Plans." Defendants even misrepresented that it was selling a "Seller Assisted Marketing Plans," stating in its Application and Agreement that "neither this Agreement, nor any compensation bonuses, commissions or incentive plans or programs pertaining to the Product, business consultants, Policies and Procedures, Leadership Bonus Plan or Price List of LLR constitutes a … seller assisted marketing plan."

154.    Moreover, Defendants did not provide the Plaintiffs or the Class a "Disclosure Document or an Information Sheet" as required by Cal. Civ. Code §§ 1812.205 and 1812.206. Furthermore, the LuLaRoe business opportunity contracts did not meet the substantive requirements of Cal. Civ. Code § 1812.209. Nor was the Defendants' seller assisted marketing plan registered as required by Cal. Civ. Code § 1812.203.

155.    As more fully alleged above, Defendants individually and through its agents, made earnings and market representations to the Plaintiffs and the Class without the substantiating data or disclosures required by Cal. Civ. Code § 1812.204. The representations were fraudulent in violation of Cal. Civ. Code §§ 1812.201 and 1812.204.

156.    Plaintiffs purchased Defendants' "Seller Assisted Marketing Plans" and continued purchasing their "Seller Assisted Marketing Plans." In reliance on the misrepresentations and omissions alleged herein, Plaintiffs continued purchasing product from LLR, Inc. and continued to believe, among other things,

that LLR, Inc. was running a legitimate business that did not violate the Seller Assisted Marketing Plan laws or other laws.

157.    Defendants' sale of an unregistered "Seller Assisted Marketing Plan" from the state of California entitles the Plaintiffs and the Class to their actual damages, attorneys' fees, rescission of the agreements at issue, and punitive damages pursuant to Cal. Civ. Code §§ 1812.215 and 1812.218.

158.    Defendants' disclosure violations entitle Plaintiffs and the Class to their actual damages, attorneys' fees, rescission of the agreements at issue, and punitive damages pursuant to Cal. Civ. Code §§ 1812.215 and 1812.218.

159.    Defendants' anti-fraud violations entitle the Plaintiffs and the Class to recover their damages pursuant to Cal. Civ. Code §§ 1812.215 and 1812.218.

160.    By performing the foregoing acts, Defendants acted with the intent to injure Plaintiffs and acted with malice, oppression, and/or fraud. Alternatively, the acts Defendants performed were despicable and in conscious disregard of the probability of damage to Plaintiffs and the rest of the putative class members, and, thus, the conduct alleged herein supports an award of punitive damages pursuant to Civil Code section 3294 in an amount designed to punish Defendants and to deter such conduct in the future. To the extent that such acts by Defendants were conducted through their employees, those employees were either its officers, directors or managing agents of Defendants, or such officers, directors or managing agents were aware in advance that such conduct would occur, exhibited conscious disregard for the rights of others in employing the employee, or directed or ratified such conduct by its employee(s).

///

///

///

**CLASS ACTION COMPLAINT**

**SIXTH CLAIM FOR RELIEF**

**(Unfair and Deceptive Practices Claims Under**

**Cal. Bus, & Prof. Code § 17200, *et seq.*)**

**Against All Defendants**

**(On Behalf of the Class)**

161.    Plaintiffs reallege and incorporate paragraphs 1-102 and 141-160.

162.    Defendants have engaged in constant unlawful, fraudulent, and unfair business acts or practices, and unfair, deceptive, false and misleading advertising within the meaning of the California Business and Professions Code § 17200, *et seq.* The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized thousands of Consultants.

**Defendants' Sales and Marketing Plan was Unlawful**

163.    Under California Business and Professions Code § 17200, an "unlawful" business practice is one that violates California law.

164.    Defendants' business practices are unlawful under § 17200 because they are an unlawful "seller assisted marketing plan" in violation of California Seller Assisted Marketing Plan Act, Cal. Civ. Code §§ 1812.200, *et seq.*

165.    And, Defendants' business practices are unlawful under § 17200 because they violate § 17500 *et seq.*, as alleged in the Seventh Claim.

**Defendants' Sales and Marketing Plan is Fraudulent**

166.    Under California Business and Professions Code § 17200, a "fraudulent" business practice is one that is likely to deceive the public.

167.    First, as detailed herein, Defendants promoted participation in a seller assisted marketing plan, but failed to disclose that it was such a plan, misrepresented whether it was such a plan, and did not follow the laws pertaining to such plan.

168.    Defendants knew, or should have known, that they were promoting and selling a seller assisted marketing plan that violated California law.

169.   As a direct result of Defendants' fraudulent representations and omissions regarding the seller assisted marketing plan described herein, Defendants wrongly acquired money from Plaintiffs and the members of the classes.

170.   Each of the named Plaintiffs actually relied on the alleged fraudulent conduct. Had any of the named Plaintiffs known the truth behind Defendants misrepresentations and/or material omissions, none of the Plaintiffs would have purchased such seller assisted marketing plan, nor would they have continued to purchase such seller assisted marketing plans.

171.   Defendants knew that Plaintiffs and the class would reasonably rely on their representations and material omissions, which would cause the Plaintiffs and the class to purchase and continue purchasing seller assisted marketing plans, and Plaintiffs did in fact reasonably rely on such representations and omissions by purchasing and continuing to purchase such seller assisted marketing plans.

172.   The fraudulent acts, representations, and omissions described herein were material not only to Plaintiffs and the class, but also to reasonable persons.

### **Defendants' Sales and Marketing Plan is Unfair**

173.   Under California Business and Professions Code § 17200, a business practice is "unfair" if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury which outweighs its benefits.

174.   For the reasons set forth herein and above, Defendants' promotion and operation of a seller assisted marketing plan in violation of California law was unethical, oppressive, and unscrupulous in that Defendants had been duping Plaintiffs and the class out hundreds of millions of dollars.

175.   Defendants' actions have few, if any, benefits. Thus, the injury caused to Plaintiffs and the class easily and dramatically outweighs the benefits, if any.

**CLASS ACTION COMPLAINT**

176. Defendants should be made to disgorge all ill-gotten gains and return to Plaintiffs and the class all wrongfully taken amounts.

177. Finally, Defendants' unlawful, fraudulent and unfair acts and omissions will not be completely and finally stopped without orders of an injunctive nature. Under California Business and Professions Code section 17203, Plaintiffs and the Class seek a judicial order of an equitable nature against all Defendants, including, but not limited to, an order declaring such practices as complained of to be unlawful, fraudulent and unfair, and enjoining them from further undertaking any of the unlawful, fraudulent and unfair acts or omissions described herein.

## SEVENTH CLAIM FOR RELIEF

### False Advertising

### (California Business and Professions Code § 17500, *et seq.*)

### Against All Defendants

### (On Behalf of the Class)

178. Plaintiffs reallege and incorporate paragraphs 1-102 and 141-177.

179. Defendants' business acts, false advertisements and materially misleading omissions constitute false advertising, in violation of the California Business and Professions Code § 17500, *et seq*.

180. Each of the Defendants are either a person, firm, corporation, association, or an employee thereof, that, with intent, directly, or indirectly, in order to dispose of property, induced the class, including Plaintiffs, to become Consultants, based on untrue, and misleading statements regarding whether it was selling and/or promoting a seller assisted marketing plan. Defendants knew that its representations and/or omissions were false and/or misleading.

///

///

///

**CLASS ACTION COMPLAINT**

**EIGHTH CLAIM FOR RELIEF**

**Violation of California Corporations Code**

**Against all Defendants**

**(On Behalf of the Class)**

181.     Plaintiffs reallege and incorporate paragraphs 1-102 and 141-180 above.

182.     California Corporations Code § 25401 provides that it is unlawful for any person to offer to sell or sell a security in California by means of any written or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which the statements were made, not misleading.

183.     The clothing items that the Corporate Defendants sold to Consultants, including Plaintiffs, were securities.

184.     Defendants, by engaging in the conduct described above, in connection with the purchase or sale of a security, by the use of written or oral communications made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances, under which they were made, accurate and not misleading. Among other things, Defendants failed to explain that the investment in LuLaRoe clothing was a seller assisted marketing plan that violated California law.

185.     To the extent any of the Defendants did not sell the clothing directly, they are still liable because such Defendants either control the selling Defendant, are officers or directors of the selling Defendant, and/or are employees that materially aided in selling Defendants' misrepresentations/omissions.  Cal. Corp. Code § 25504 provides that "[e]very person who directly or indirectly controls a person liable under 25501 [providing remedy for violation of § 25401] … every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing

similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

186.    Moreover, California Corporations Code § 25504.1 provides that "Any person who materially assists in any violation of section 25110, 25120, 25130, 25133, or 25401…with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation." Thus, to the extent any Defendant did not directly sell the securities, such Defendants are alternatively liable under § 25504.1 because they materially assisted the selling Defendant with misrepresentations/omissions as alleged herein, with the intent to deceive or defraud.

**CLAIMS BASED ON DEFENDANTS' FRAUD INDUCING**
**CONSULTANTS TO CONTINUE PURCHASING PRODUCT AFTER**
**THEIR INITIAL INVESTMENT**

**NINTH CLAIM FOR RELIEF**

**(Unfair and Deceptive Practices Claims Under**
**Cal. Bus, & Prof. Code § 17200, *et seq.*)**

**Against All Defendants**

**(On Behalf of the Class)**

187.    Plaintiffs reallege and incorporate paragraphs 7, 12-32, 44-47, 50, 52, 55-56, 61-66, 70-74, 80-82, 88-95, 96(e)-(l), 97-102. This claim does not incorporate any allegations that can be interpreted to allege any violation of any duty, obligation, or term or condition, imposed by any LuLaRoe Independent Consultant Program Application & Agreement, LuLaRoe's policies and procedures, or LuLaRoe's compensation plan.

188.   Defendants have engaged in constant unlawful, fraudulent, and unfair business acts or practices, and unfair, deceptive, false and misleading advertising within the meaning of the California Business and Professions Code § 17200, *et seq.* The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized thousands of Consultants.

### **Defendants' Sales and Marketing Plan was Unlawful**

189.   Under California Business and Professions Code § 17200, an "unlawful" business practice is one that violates California law.

190.   Defendants' business practices are unlawful under §17200 because they violate §17500 et seq., as alleged in the Tenth Claim.

### **Defendants' Sales and Marketing Plan is Fraudulent**

191.   Under California Business and Professions Code § 17200, a "fraudulent" business practice is one that is likely to deceive the public.

192.   Defendants each separately made misrepresentations or omitted material information in order to fraudulently and unfairly induce Consultants, including Plaintiffs, to continue purchasing products after becoming LuLaRoe Consultants, by, among other things:

a.   Misrepresenting that if they "buy more." they will then "sell more;"

b.   Misrepresenting that they will honor a 100% return policy, which Defendants never intended to honor;

c.   Misrepresenting the retailer map to conceal just how saturated the Consultant market was;

d.   Failing to disclose that the quality in the products is declining and/or being improperly stored;

e.   Intentionally providing only a few popular items in each shipment so that Consultants would have to purchase more items; and

f.   Intentionally omitting the 2017 income statement, and leaving a

45

2016 income statement, which was not reflective of 2017 when business was declining.

193.    Defendants knew, or should have known, that the representations encouraging Consultants to purchase additional product were misleading in nature.

194.    As a direct result of Defendants' fraudulent representations and omissions described above, Defendants wrongly acquired money from Plaintiffs and the members of the classes.

195.    Each of the named Plaintiffs actually relied on the alleged fraudulent conduct. Had any of the named Plaintiffs known the truth behind Defendants misrepresentations and/or material omissions, Plaintiffs would not have continued purchasing product from Defendants.

196.    Defendants knew that Plaintiffs and the class would reasonably rely on their representations and material omissions, which would cause the Plaintiffs and the class to purchase additional products, and Plaintiffs did in fact reasonably rely on such representations and omissions by continuing to purchase such products.

197.    The fraudulent acts, representations, and omissions described herein were material not only to Plaintiffs and the class, but also to reasonable persons.

**Defendants' Sales and Marketing Plan is Unfair**

198.    Under California Business and Professions Code § 17200, a business practice is "unfair" if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury which outweighs its benefits.

199.    For the reasons set forth above, Defendants' representations and omissions were unethical, oppressive, and unscrupulous in that Defendants had been duping Plaintiffs and the class into continuing to purchase products that Plaintiffs and the class members would have difficulty in selling.

200.    Defendants' actions have few, if any, benefits. Thus, the injury

46

caused to Plaintiffs and the class easily and dramatically outweighs the benefits, if any.

201.    Defendants should be made to disgorge all ill-gotten gains and return to Plaintiffs and the class all wrongfully taken amounts.

202.    Finally, Defendants' unlawful, fraudulent and unfair acts and omissions will not be completely and finally stopped without orders of an injunctive nature. Under California Business and Professions Code § 17203, Plaintiffs and the class seek a judicial order of an equitable nature against all Defendants, including, but not limited to, an order declaring such practices as complained of to be unlawful, fraudulent and unfair, and enjoining them from further undertaking any of the unlawful, fraudulent and unfair acts or omissions described herein.

**TENTH CLAIM FOR RELIEF**

**False Advertising**

**(California Business and Professions Code § 17500, *et seq*.)**

**Against All Defendants**

**(On Behalf of the Class)**

203.    Plaintiffs reallege and incorporate paragraphs 7, 12-32, 44-47, 50, 52, 55-56, 61-66, 70-74, 80-82, 88-95, 96(e)-(l), 97-102, 187-202. This claim does not incorporate any allegations that can be interpreted to allege any violation of any duty, obligation, or term or condition, imposed by any LuLaRoe Independent Consultant Program Application & Agreement, LuLaRoe's policies and procedures, or LuLaRoe's compensation plan.

204.    Defendants' following business acts, false advertisements and materially misleading omissions constitute false advertising, in violation of the California Business and Professions Code § 17500, *et seq*.:

    a.    Misrepresenting that if they "buy more," they will then "sell more;"

**CLASS ACTION COMPLAINT**

b.    Misrepresenting that Defendants will honor a 100% return policy, which Defendants never intended to honor;

c.    Misrepresenting the retailer map to conceal just how saturated the Consultant market was;

d.    Failing to disclose that the quality in the products is declining and/or being improperly stored;

e.    Intentionally providing only a few popular items in each shipment so that Consultants would have to purchase more items; and

f.    Intentionally omitting the 2017 income statement, and leaving a 2016 income statement, which was not reflective of 2017 when business was declining.

## ELEVENTH CLAIM FOR RELIEF
### Violation of California Corporations Code
### Against all Defendants
### (On Behalf of the Class)

205.    Plaintiffs reallege and incorporate paragraphs 7, 12-32, 44-47, 50, 52, 55-56, 61-66, 70-74, 80-82, 88-95, 96(e)-(l), 97-102, 187-204. This claim does not incorporate any allegations that can be interpreted to allege any violation of any duty, obligation, or term or condition, imposed by any LuLaRoe Independent Consultant Program Application & Agreement, LuLaRoe's policies and procedures, or LuLaRoe's compensation plan.

206.    California Corporations Code § 25401 provides that it is unlawful for any person to offer to sell or sell a security in California by means of any written or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which the statements were made, not misleading.

207.    The clothing items that the Corporate Defendants sold to Consultants, including Plaintiffs, were securities.

48

208.   Defendants, by engaging in the conduct described above, in connection with the purchase or sale of a security, by the use of written or oral communications made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances, under which they were made, accurate and not misleading. Among other things, Defendants

a.   Misrepresented that if they "buy more," they will then "sell more;"

b.   Misrepresented that Defendants will honor a 100% return policy, which Defendants never intended to honor;

c.   Misrepresented the retailer map to conceal just how saturated the Consultant market was;

d.   Failed to disclose that the quality in the products is declining and/or being improperly stored;

e.   Intentionally provided only a few popular items in each shipment so that Consultants would have to purchase more items; and

f.   Intentionally omitted the 2017 income statement, and leaving a 2016 income statement, which was not reflective of 2017 when business was declining.

209.   To the extent any of the Defendants did not directly sell the securities, such Defendants are likewise liable because they either control the selling Defendant, are officers or directors of selling Defendant, and/or are employees that materially aided in selling Defendant's misrepresentations/ omissions. Cal. Corp. Code § 25504 provides that "[e]very person who directly or indirectly controls a person liable under 25501 [providing remedy for violation of § 25401] … every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially

1  aids in the act or transaction constituting the violation, and every broker-dealer or

2  agent who materially aids in the act or transaction constituting the violation, are

3  also liable jointly and severally with and to the same extent as such person, unless

4  the other person who is so liable had no knowledge of or reasonable grounds to

5  believe in the existence of the facts by reason of which the liability is alleged to

6  exist."

7      210.    Moreover, California Corporations Code § 25504.1 provides that

8  "Any person who materially assists in any violation of section 25110, 25120,

9  25130, 25133, or 25401…with intent to deceive or defraud, is jointly and severally

10  liable with any other person liable under this chapter for such violation."  To the

11  extent any of the Defendants did not directly sell securities, they are still

12  alternatively liable under § 25504.1 because they materially assisted selling

13  Defendant with misrepresentations/omissions as alleged herein, with the intent to

14  deceive or defraud.

**TWELFTH CLAIM FOR RELIEF**

**RICO (18 U.S.C. § 1962 (a))**

**Against All Defendants**

**(On Behalf of the Class)**

19      211.    Plaintiffs reallege and incorporate paragraphs 7, 12-32, 44-47, 50, 52,

20  55-56, 61-66, 70-74, 80-82, 88-95, 96(e)-(l), 97-102 above. Plaintiffs do not

21  incorporate any allegations that expressly plead or imply that (a) Defendants were

22  operating a pyramid scheme or endless chain scheme, and (b) that Consultants'

23  purchase of LuLaRoe product was the purchase of a security. Moreover, this claim

24  does not incorporate any allegations that can be interpreted to allege any violation

25  of any duty, obligation, or term or condition, imposed by any LuLaRoe

26  Independent Consultant Program Application & Agreement, LuLaRoe's policies

27  and procedures, or LuLaRoe's compensation plan.

28      212.    Defendants and others willfully and intentionally violated and

50

**CLASS ACTION COMPLAINT**

continue to violate RICO and California law with the goal of obtaining money, directly and indirectly, through a pattern of racketeering activities in violation of the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. 1962(a).

213.   Defendants engaged in activities affecting federal interstate and foreign commerce and are entities capable of holding a legal or beneficial interest in property. Defendants are "persons," as that term is defined by 18 U.S.C. §1961(3).

214.   Defendants make up the enterprise, an association of entities and individuals associated to operate a fraudulent scheme. The enterprise is not a legal entity within the meaning of "enterprise" as defined by 18 U.S.C. § 1961(4). Defendants have been members of this enterprise from at least approximately 2013 and continuing until the present. Defendants are separate entities and individuals that make up the enterprise:

a.   Deanne Brady is one of the founders, architects, beneficiaries and promoters of the fraudulent enterprise. Through interstate wires and mails, Brady makes misrepresentations and omits material facts regarding working as a Consultant and/or purchases pertaining to LuLaRoe products.

b.   Mark Stidham is one of the founders, architects, beneficiaries and promoters of the fraudulent enterprise. Through interstate wires and mails, Stidham makes misrepresentations and omits material facts regarding working as a consultant and/or purchases pertaining to LuLaRoe products.

c.   Lennon Leasing, LLC is the owner of the LuLaRoe mark and promotes the fraudulent enterprise through the use of the LuLaRoe mark which are used through interstate wires and mails.

d.   LLR, Inc. is the operational arm of the enterprise that purchases clothing to then sell to Consultants.

e.   LuLaRoe, LLC oversees, among other things, the marketing of the sales of LuLaRoe products to Consultants.

**CLASS ACTION COMPLAINT**

215.   From approximately January 2013 and continuing until the present, within the Central District of California and elsewhere, Defendants in association with each other knowingly, willfully, and unlawfully participated, directly and indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Each defendant knowingly participated in the scheme to defraud with specific intent to deceive.

216.   From at least 2013 and continuing until the present, Defendants executed a scheme to defraud through a pattern of racketeering made up of distinct acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. The enterprise engaged in and affected interstate and foreign trade. The enterprise transacts business through the instrumentalities of interstate commerce such as telephones, facsimile machines, the internet, email, and the United States mail and interstate commercial carrier to communicate in furtherance of the activities of the enterprise. The enterprise advertises, markets, and sells products and services throughout the United States. The operation of the enterprise continued over several years, including activities in every state, and has affected and damaged, and continues to affect and damage, commercial activity.

217.   To further the goals of the enterprise, which were to (1) earn money through fraudulent means, (2) entice Consultants to continue purchasing products from LuLaRoe; and (3) reap large profits for themselves based on false representations, Defendants engaged in various forms of illegal activity, including, but not limited to mail fraud and wire fraud.

218.   The pattern of racketeering activity alleged is distinct from the enterprise. Each act of racketeering activity is distinct from the enterprise in that each is a separate offense committed by an entity or individual while the enterprise is an association of entities and individuals. The enterprise has an ongoing structure and/or organization supported by personnel and/or associates with continuing functions or duties.

**CLASS ACTION COMPLAINT**

219.   The racketeering acts set out above and below, and others, all had the same pattern and similar purpose of defrauding and/or injuring Plaintiffs and the class for the benefit of the enterprise and its members. Each racketeering act was related, had a similar purpose, involved the same or similar participants and methods of commission and had similar results affecting Plaintiffs and the class. The racketeering acts of mail and wire fraud were also related to each other in that they were part of the enterprise goal to fraudulently induce Plaintiffs to purchase product.

220.   Defendants' wrongful conduct has been and remains part of the enterprise's way of doing business and constitutes a continuing threat to the property of Plaintiffs and the class. Without the repeated acts of mail and wire fraud, the enterprise's fraudulent scheme would not have succeeded.

221.   Revenue gained from the pattern of racketeering activity, which constitutes a significant portion of the total income of Defendants, was reinvested in the operations of the enterprise for the following purposes: (a) to expand the enterprise through additional false and misleading advertising and promotional materials aimed at having Consultants continue to purchase additional product and facilitate the execution of the illegal scheme.

222.   Plaintiffs were injured by the reinvestment of the racketeering income into the enterprise because, among other things, they continued purchasing more product and the market became saturated with LuLaRoe product and consultants.

223.   In connection with promoting and executing their illegal scheme, members of the enterprise knowingly and recklessly placed and caused to be placed in the United States mail or by interstate commercial carrier, or took or received therefrom, matters or things to be sent to or delivered by the United States mail or by interstate commercial carrier comprising, among other things product, invoices, letters, promotional materials, brochures, products and checks to

Plaintiffs and the class and received communications between and among themselves through the United States mail, in all fifty states and the District of Columbia. It was reasonably foreseeable that these mailings or receipts would take place in furtherance of the fraudulent scheme.

224.    In connection with promoting and executing their illegal scheme, members of the enterprise engaged in wire fraud, in violation of 18 U.S.C. § 1343, by, among other things, knowingly and recklessly transmitting or causing to be transmitted with wire communications, in interstate and foreign trade, materials promoting the fraudulent scheme and fraudulent seller assisted marketing plan on, among other things, internet web sites, email, telephone, and text messages, including promotional materials, product information, and invoices. Defendants maintain websites on the internet promoting LuLaRoe products where inducements to continue working as a consultant are made. Defendants also maintain and host online hosting promotional videos making material misrepresentations and omissions of material fact regarding the fraudulent scheme. Defendants sent and received these interstate wire communications to and from all fifty states and the District of Columbia.

225.    Each Defendant has promoted the enterprise. Each use of the mail or wire by Defendants done in furtherance of the LuLaRoe Pyramid is an act of racketeering.

226.    Defendants' representations and omissions were the proximate cause of Plaintiffs and the class joining the fraudulent scheme and also purchasing product. Defendants' representations and omissions were also the proximate cause of Plaintiffs and the class being unable to sell their product.

227.    To the extent proof of reliance is legally required, in engaging in the aforementioned wire and mail fraud, Defendants knew that Plaintiffs and the class would reasonably rely on their representations and omissions which would cause the plaintiffs and the class to become consultants and purchase products.

**CLASS ACTION COMPLAINT**

228.    Defendants knew that the misrepresentations and omissions described herein in promoting and executing the fraudulent scheme were material.

229.    Had Plaintiffs and the class known the truth behind Defendants' misrepresentations and omissions, they would not have purchased and would not have continued to purchase LuLaRoe product. Moreover, had Defendants not made the misrepresentations and omissions, Plaintiffs would not have lost money on the purchase of LuLaRoe product.

230.    Defendants' acts of mail and wire fraud were a proximate cause of the injuries that Plaintiffs and the class suffered. Because of Defendants' pattern of unlawful conduct, Plaintiffs and the Class lost hundreds of millions (if not billions) of dollars.

231.    Under 18 U.S.C. § 1964, Plaintiffs and the class are entitled to treble their damages, plus interest, costs and attorney's fees.

### THIRTEENTH CLAIM FOR RELIEF

### RICO (18 U.S.C. § 1962 (c))

### Against All Defendants

### (On Behalf of the Class)

232.    Plaintiffs reallege and incorporate paragraphs 7, 12-32, 44-47, 50, 52, 55-56, 61-66, 70-74, 80-82, 88-95, 96(e)-(l), 97-102, 211-231 above. Plaintiffs do not incorporate any allegations that expressly plead or imply that (a) Defendants were operating a pyramid scheme or endless chain scheme, and (b) that Consultants' purchase of LuLaRoe product was the purchase of a security. Moreover, this claim does not incorporate any allegations that can be interpreted to allege any violation of any duty, obligation, or term or condition, imposed by any LuLaRoe Independent Consultant Program Application & Agreement, LuLaRoe's policies and procedures, or LuLaRoe's compensation plan.

233.    Defendants are associated with the enterprise. In violation of 18 U.S.C. § 1962(c), Defendants conducted and/or participated in the conduct of the

affairs of the enterprise, including participation in activities in furtherance of the fraudulent scheme, through the pattern of racketeering activity earlier alleged.

234.   As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs were induced to, and did, become consultants and purchased billions of dollars of the LuLaRoe products. Moreover, as a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs lost money on their purchase of product. Plaintiffs were injured by Defendants' unlawful conduct. The funds used to buy LuLaRoe products constitute property of Plaintiffs and the class within the meaning of 18 U.S.C. § 1964(c).

235.   Under 18 U.S.C. § 1964(c), Plaintiffs and the class are entitled to treble their damages, plus interest, costs and attorney's fees.

### FOURTEENTH CLAIM FOR RELIEF

### RICO (18 U.S.C. § 1962 (d))

### Against All Defendants

### (On Behalf of the Class)

236.   Plaintiffs reallege and incorporate paragraphs 7, 12-32, 44-47, 50, 52, 55-56, 61-66, 70-74, 80-82, 88-95, 96(e)-(l), 97-102, 211-235 above. Plaintiffs do not incorporate any allegations that expressly plead or imply that (a) Defendants were operating a pyramid scheme or endless chain scheme, and (b) that Consultants' purchase of LuLaRoe product was the purchase of a security. Moreover, this claim does not incorporate any allegations that can be interpreted to allege any violation of any duty, obligation, or term or condition, imposed by any LuLaRoe Independent Consultant Program Application & Agreement, LuLaRoe's policies and procedures, or LuLaRoe's compensation plan.

237.   Defendants agreed to work together in a symbiotic relationship to carry on the illegal scheme. Under that agreement, Defendants and others conspired to violate 18 U.S.C. § 1962(a) and (c), in violation of 18 U.S.C. § 1962(d).

**CLASS ACTION COMPLAINT**

238.    As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(d), Plaintiffs were injured by Defendants' unlawful conduct.

239.    Under 18 U.S.C. § 1964(c), Plaintiffs and the class are entitled to treble their damages, plus interest, costs and attorney's fees.

## **PRAYER FOR RELIEF**

The named Plaintiffs and the Plaintiff class request the following relief:

        a.    Certification of the class;

        b.    A jury trial and judgment against Defendants;

        c.    Rescission of the agreements upon which the scheme is based, and recovery of all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme;

        d.    Damages for the financial losses incurred by Plaintiffs and by the class and subclasses because of the Defendants' conduct and for injury to their business and property;

        e.    Restitution and disgorgement of monies;

        f.    Temporary and permanent injunctive relief enjoining Defendants from promoting a seller assisted marketing plan in violation of Civil Code §§ 1812.200, *et seq* and from continuing to make misrepresentations and omit material facts;

        g.    Exemplary damages pursuant to Civil Code § 1812.218.

        h.    The cost of suit including reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, Civil Code §1689.2, Civil code 1812.218, 18 U.S.C. § 1964(c) and otherwise by law.

        i.    For damages in an amount yet to be ascertained as allowed by law;

        j.    Treble damages under 18 U.S.C. § 1964(c); and

        k.    For such other damages, relief and pre- and post-judgment interest as the Court may deem just and proper.

**CLASS ACTION COMPLAINT**

1   Dated: March 8, 2019                    FOLEY BEZEK BEHLE & CURTIS, LLP

2

3                                            By: */s/ Kevin D. Gamarnik*

4                                               KEVIN D. GAMARNIK
                                                AARON L. ARNDT
5                                               JORDAN A. LIEBMAN
                                                *Attorneys for Plaintiffs*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

1

2

## **DEMAND FOR JURY TRIAL**

3

Plaintiffs demand a jury trial as provided by Rule 38(a) of the Federal Rules

4

of Civil Procedure.

5

6

Dated: March 8, 2019                          FOLEY BEZEK BEHLE & CURTIS, LLP

7

8

By: */s/ Kevin D. Gamarnik*

9

KEVIN D. GAMARNIK
AARON L. ARNDT

10

JORDAN A. LIEBMAN

11

*Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**