JS-6

STAY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TABITHA SPERRING, PAISLIE MARCHANT, and SALLY POSTON, individually and on behalf of similarly situated persons,<br><br>                    Plaintiffs,<br><br>v.<br><br>LLR, INC., a Wyoming corporation; LULAROE, LLC, a California limited liability company; LENNON LEASING, LLC, a Wyoming limited liability company; MARK A. STIDHAM, an individual; DEANNE S. BRADY a/k/a DEANNE STIDHAM, an individual; and DOES 1-30, inclusive,<br><br>                    Defendants. | Case No. 5:19-cv-00433-AB-SHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

## I.    INTRODUCTION

Pending before the Court is Defendants LLR, Inc. ("LLR"), LuLaRoe, LLC ("LuLaRoe"), Lennon Leasing, LLC ("Lennon Leasing"), Mark A. Stidham, and Deanne S. Brady a/k/a Deanne Stidham's ("Defendants") Motion to Compel

1.

1  Plaintiffs[1] to Individually Arbitrate and to Dismiss or Stay This Action. (Dkt. No. 24

2  (contains "Notice of Mot." & "Mot.") For the following reasons, the Court **GRANTS**

3  **in part** and **DENIES in part** Defendants' Motion.

4  ## II.        BACKGROUND

5         On March 8, 2019, Plaintiffs filed the original complaint against Defendants.

6  (Dkt. No. 1 ("Compl.").) Plaintiffs' claims arise out of LuLaRoe's alleged "unlawful,

7  fraudulent pyramid scheme" through which it recruited "mothers to become

8  'consultants,'"[2] who "believe[d] that they w[ould] be able to sell LuLaRoe's various

9  clothing items to a retail market" and "generate substantial income while still being

10  able to spend time at home with their families." (Compl. ¶ 1.) Plaintiffs were all

11  consultants. (Compl. ¶ 2.) According to Plaintiffs, consultants "paid thousands of

12  dollars for the initial opportunity to purchase from LuLaRoe clothing items for the

13  purpose of selling such items." (*Id.*) "Any Consultant who sign[ed] up for the

14  LuLaRoe [multi-level marketing ("MLM")] and pa[id] the initial 'onboarding' fee,

15  which range[d] from $2,000 to $9,000 (if not more) depending on the package, [was]

16  eligible to participate in LuLaRoe's Leadership Bonus Plan," which "gave

17  Consultants a right to receive compensation entirely based on the recruitment of other

18  persons as participants in the LuLaRoe MLM." (Compl. ¶ 34.)

19         Plaintiffs claim that LuLaRoe's plan paid millions to "those few at the top . . . at

20  the expense of the many at the bottom," because "LuLaRoe paid a significant portion

21  of every dollar that Plaintiffs and other consultants paid for LuLaRoe products to

22  others in the form of bonuses, regardless of the consultant's actual retail sales."

23  (Compl. ¶ 6.)  Plaintiffs further claim that to incentivize Plaintiffs to continue buying

24  large amounts of LuLaRoe merchandise, Defendants "represent[ed] to consultants that

25  as long as they '[bought] more' LuLaRoe products, they [would] 'sell more' LuLaRoe

26

27  _____

28  [1] The term "Plaintiffs " refers to Tabitha Sperring, Paislie Marchant, and Sally Poston.
   [2] LLR "consultants" are also referred to as "retailers" and "representatives."

1  products . . . [and] that there [was] nothing to lose because LuLaRoe [would] honor a

2  full 100% return policy (with free shipping and handling)" all while "omitting that the

3  LuLaRoe quality of product [was] declining, . . . the market [was] saturated, . . . [and]

4  providing misleading income statements and retailer maps." (Compl. ¶ 7.)

5      Plaintiffs' original Complaint alleges claims for: (1) violation of California's

6  Penal Code § 327; (2) violation of California's Unfair Competition Law ("UCL"),

7  Business & Professions Code § 17200, et seq.; (3) violation of California's Seller

8  Assisted Marketing Plan Act, Civil Code § 1812.200, et seq.; (4) violation of the

9  California's False Advertising Law, Business & Professions Code § 17500, et seq.; (5)

10  breach of contract; (6) violation of California Corporations Code; (7) violation of the

11  Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Compl. ¶¶ 8, 10, 11,

12  164, 206.)

13      On April 3, 2019 Plaintiffs filed a First Amended Complaint ("FAC"). (Dkt.

14  No. 18 ("FAC").) The FAC removes Plaintiffs' allegations  that they "lost money as

15  LuLaRoe Consultants." (Compl. ¶ 92; FAC ¶ 92.)  Plaintiffs seek to represent two

16  subclasses:  (1) Consultants who still have LuLaRoe products; and (2) Consultants

17  who no longer have LuLaRoe products.  (FAC ¶ 92(A), (B).)  It also adds that "any

18  Consultants that held a Mentor, Coach, or Trainer position" are excluded from the

19  class.  (FAC ¶ 93.)  Further, Plaintiffs allege that they "invited Defendants to mediate

20  Plaintiffs' claims in good faith . . . [but] Defendants . . . affirmatively declined to

21  attempt to resolve all of the claims alleged [in the FAC] through mediation."  (FAC ¶

22  103.)

23      On May 6, 2019, Defendants filed the Motion to Compel Plaintiffs to

24  Individually Arbitrate and to Dismiss or Stay This Action.  (Mot.)  On May 24, 2019,

25  Plaintiffs opposed.  (Dkt. No. 27 ("Opp'n").)  On May 31, 2019, Defendants replied.

26  (Dkt. No. 28 ("Reply").)

27      The Court took the Motion under submission on June 12, 2019 to be decided

28  without oral argument.  (Dkt. No. 29.)

3.

### III.        LEGAL STANDARD

Under the Federal Arbitration Act (FAA), "a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  Accordingly, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may" file a petition in a United States district court for an order compelling arbitration.  9 U.S.C. § 4.  In finding that the making of the arbitration agreement is not at issue, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

The FAA constitutes a "congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), as it leaves no room for a district court's exercise of discretion "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) (emphasis in original).  Nevertheless, since "arbitration is a matter of contract, . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

Under the FAA, the Court must look to (1) whether a valid agreement to arbitrate exists and (2) whether the dispute falls within the arbitration clause's scope when deciding a motion to compel arbitration.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If a valid agreement exists and the dispute falls within the arbitration clause's scope, "then the Act requires the [C]ourt to enforce the arbitration agreement in accordance with its terms." *Id.*  Under the FAA, "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (emphasis in original).

/ / /

4.

1

**IV.      DISCUSSION**

Defendants' request that the Court (1) compel Plaintiffs to individually mediate, then individually arbitrate their claims, and (2) stay or dismiss Plaintiffs' action. (Mot. at 22, 23.)  Defendants make this request, arguing that each Plaintiff signed a version of the Retailer Agreement,[3] "which contains—on its face and in the Policies and Procedures [incorporated by reference]—an unambiguous agreement to arbitrate any dispute 'arising from or relating to' the Retailer Agreement." (Mot. at 9, 10 (citing Declaration of Justin Lyon in Support of Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This Action, Dkt. No. 24 ("Lyon Decl."), ¶ 3, Ex. 1 ("Ret. Agmt. 4.0") ¶ 21; Lyon Decl. ¶ 4, Ex. 2 ("Ret. Agmt. 6.5.1") ¶ 25; Lyon Decl. ¶ 5, Ex. 3 § 6.4; Lyon Decl. ¶ 6, Ex. 4 at 54).)  Defendants contend that "Plaintiffs' claims necessarily arise out of and depend on the Retailer Agreements and Policies and Procedures that created the parties' relationship and contain the arbitration agreement." (Mot. at 9.)

Defendants argue that despite being incorporated by reference, the Policies and Procedures are "binding, even if [Plaintiffs] did not have or see it at the time of the agreement" provided that "(1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties." (Mot. at 10.)  Defendants maintain that "[t]he Policies and Procedures [were] repeatedly referenced as a separate document in the Retailer Agreement," "Plaintiffs affirmatively represented that they 'read and agree[d] to comply with the LLR, Inc. Policies and Procedures,'" and the "Policies and Procedures and amendments were available to each Plaintiff on the Back Office (intranet), on request from LLR, and from the Retailer who referred each Plaintiff to LLR."[4]  (Mot. at 11.)

---

[3] The versions referred to include Versions 4.0 and 6.5.1. (Mot. at 2.)
[4] Additionally, "Retailers with version 6.5.1 of the Retailer Agreement received a link to the Policies and Procedures (that they affirmatively agreed to) before they assigned

1   Defendants contend that Plaintiffs should be compelled to individually mediate
2   and arbitrate their claims, because Plaintiffs accepted the arbitration provision, the
3   arbitration provision encompasses this dispute, and no generally applicable contract
4   defense invalidates the arbitration provision.  (Mot. at 9–19.)  Defendants assert that
5   each Defendant may enforce the arbitration provision.  (Mot. at 19.)  Lastly,
6   Defendants argue that this Court may compel individual arbitration.  (Mot. at 20.)

7   Plaintiffs oppose Defendants' Motion, arguing that the arbitration provision is
8   unenforceable, because it is substantively and procedurally unconscionable.  (*See*
9   Opp'n at 4–20, 25.)  In addition, Plaintiffs contend mere severance of the
10  unconscionable provisions is improper, because the arbitration provision is permeated
11  with unconscionability.  (Opp'n at 20–22.)  Plaintiffs further assert that even if the
12  arbitration clause is enforceable, only the sole signatory defendant to the Retailer
13  Agreement, LLR, can enforce it.  (Opp'n at 22.)  Plaintiffs reason that non-signatory
14  defendants cannot enforce the arbitration provision, because the doctrine of equitable
15  estoppel does not apply.  (Opp'n at 22–24.)  Lastly, Plaintiffs argue that the mediation
16  provision is unenforceable, because mediation is only required prior to arbitration, and
17  the arbitration provision here is unenforceable. (Opp'n at 25.)

18  **A.    A Valid Agreement Exists Between the Parties**

19  When determining whether an arbitration agreement is enforceable upon the
20  parties, a court must determine whether the parties have a valid agreement to arbitrate.
21  *Chiron*, 207 F.3d at 1130.  No party may be forced into arbitration unless it has
22  actually agreed to arbitration.  *Lounge-A-Round v. GCM Mills, Inc.*, 109 Cal. App. 3d
23  190, 195 (Ct. App. 1980).  "As a threshold condition for contract formation, there
24  must be an objective manifestation of voluntary, mutual assent."  *Anderson v. United*
25  *States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003).  "In determining the validity of an
26  agreement to arbitrate, federal courts 'should apply ordinary state-law principles that
27  ───────────────────
28  the Retailer Agreement." (Mot. at 11.)

1    govern the formation of contracts.'" *Ferguson v. Countrywide Credit Indus., Inc.*, 298

2    F.3d 778, 782 (9th Cir. 2002) (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S.

3    938, 944 (1995)).

4          Under California law, "[a] contract may validly include the provisions of a

5    document not physically a part of the basic contract." *Wolschlager v. Fid. Nat'l Title*

6    *Ins. Co.*, 111 Cal. App. 4th 784, 790 (2003) (internal quotation marks omitted).  "It is,

7    of course, the law that the parties may incorporate by reference into their contract the

8    terms of some other document." *Id.*  (internal quotation marks omitted).  "For the

9    terms of another document to be incorporated into the document executed by the

10    parties[,] the reference must be clear and unequivocal, the reference must be called to

11    the attention of the other party and he must consent thereto, and the terms of the

12    incorporated document must be known or easily available to the contracting parties."

13    *Id.*  (internal quotation marks omitted).

14          Here, both versions of the Retailer Agreement state that they incorporate the

15    Policies and Procedures by reference.  Version 4.0 states, in relevant part: "Consultant

16    acknowledges that [Consultant] has read and agree[d] to comply with the LLR INC.

17    Policies and Procedures . . . which [is] incorporated into and made a part of this

18    Agreement." (Ret. Agmt. 4.0, ¶ 5.)  Version 6.5.1 states, in relevant part: "Consultant

19    acknowledges that Consultant has read and agrees to comply with the Policies and

20    Procedures . . . which [is] incorporated into and made part of this Agreement." (Ret.

21    Agmt. 6.5.1, ¶ 11.)

22          Defendants submitted a declaration stating that if a retailer or potential new

23    retailer requested the Policies and Procedures, LLR would provide it to the retailer o

24    potential new retailer.  (*See* Declaration of Megan Alvarez in Support of Motion to

25    Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This Action, Dkt.

26    No. 24 ("Alvarez Decl."), ¶¶ 7, 9.)  Additionally, Defendants uploaded LLR's Policies

27    and Procedures and its amendment to the "Tools and Assets Folder" of Back Office

28    (LLR's intranet).  (Lyon Decl. ¶ 5–6.)  Defendants also declared that "[b]efore

September 2016, persons interested in becoming retailers often received LLR documents, including a copy of the Retailer Agreement and the Policies and Procedures, from an existing Retailer." (Alvarez Decl. ¶ 7.)  Thus, if Plaintiffs were unaware of the terms of the Policies and Procedures, Plaintiffs could review the policies by emailing LLR or accessing it on their Back Office accounts.  And while it seems that retailers are not able to access Back Office until they have agreed to the Retailer Agreement, courts have concluded that consumers assented to arbitration agreements in scenarios where the arbitration agreement was provided after the consumers had already agreed to receive the products or services.  *See, e.g.*, *Amirhamzeh v. Wells Fargo Bank, N.A.*, No. 14-CV-02123-VC, 2014 WL 12610227, at *1–2 (N.D. Cal. Oct. 31, 2014) (holding that the consumer was bound to arbitrate where consumer "did not receive the Terms and Conditions materials that included the arbitration agreement until after enrolling in the service").

Regardless, Defendants put forth evidence stating that if a potential new retailer requested the Policies and Procedures, LLR would provide it to the potential new retailer, demonstrating that the Policies and Procedures were easily available to Plaintiffs.  *See Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 998 (N.D. Cal. 2012) (applying California law and holding that a document was incorporated by reference when the plaintiff "declare[d] that he either was never given a copy of the [document] or was given it after he signed the rental agreement," because "the terms of an incorporated document must only have been easily available to him; they need not have actually been provided"); *Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N. Am., Inc.*, No. C-11-0052 EMC, 2011 WL 1086035, at *4 (N.D. Cal. Mar. 24, 2011) (holding, under California law, that a set of general terms and conditions that included an arbitration agreement and that were not provided to the plaintiff (but were available upon request) were properly incorporated by reference into a purchase agreement).

Additionally, not only do Versions 4.0 and 6.5.1 state that the Policies and

Procedures are "incorporated into and made a part of this Agreement" (Ret. Agmt. 4.0, ¶ 5, Ret. Agmt. 6.5.1, ¶ 11), but they also provide information as to where a potential new retailer may access the Policies and Procedures.  Version 4.0 states:  "If Consultant has not yet reviewed the Policies and Procedures . . . they are posted at www.lularoe.com and are also included in Consultant's first order and accessible via Consultant's Back Office login at www.mylularoe.come/login."  (Ret. Agmt. 4.0, ¶ 5.)  Version 4.0 also includes an arbitration provision and explains that the arbitration process is "more fully described in the Policies and Procedures."  (Ret. Agmt. 4.0, ¶ 21.)  Version 6.5.1 states:  "If Consultant has not yet reviewed the Policies and Procedures . . . they may be posted as directed at www.lularoe.com and are also included in Consultant's first order and accessible via Consultant's Back Office login at www.backoffice.mylularoe.com/login."  (Ret. Agmt. 6.5.1, ¶ 11.)   Although Version 6.5.1 states "may be posted" as opposed to "are posted," those Plaintiffs who signed version 6.5.1 were provided with links to the Policies and Procedures as part of the new DocuSign onboarding process that LLR initiated in September 2016 and also had to click an "I agree" button attesting that they "read, underst[ood] and agree[d] with the . . . Policies and Procedures."  (Alvarez Decl. ¶ 10, Ex. 5 at 11.)  The DocuSign onboarding process also included language that states:  "The . . . LuLaRoe Polices & Procedures . . . constitute the terms and conditions of the Consultant Agreement. . . . [Y]ou must acknowledge that you have read, understand, and agree to adhere to the terms of those documents.  If you have not already done so, click on the links provided to print and read the documents."  (Alvarez Decl., Ex. 5 at 11.)

Thus, the Court finds that Defendants have met their burden of establishing that the Policies and Procedures have been incorporated by reference into each version of the Retailer Agreement, because each version explicitly references and states that the Policies and Procedures are incorporated by reference, the reference is clear and unequivocal, such that it is called to the attention of Plaintiffs, and the terms of the Policies and Procedures were easily available.  *See Wolschlager*, 111 Cal. App. 4th at

9.

1   790 (2003).

2      Because the Court finds that Plaintiffs have assented to the Policies and

3   Procedures, and Plaintiffs do not dispute that their claims fall within the scope of the

4   arbitration provision, the Court will next examine whether the arbitration provision is

5   unconscionable.

6   **B.    The Arbitration Agreement is Not Unconscionable**

7      Plaintiffs assert that the arbitration provision contains both procedural and

8   substantive unconscionability.  Plaintiffs further contend that even if the provision

9   only contains a low level of procedural unconscionability, the provision still cannot be

10  enforced because of the substantive unconscionability.  Under California law,

11  "[procedural and substantive unconscionability] must *both* be present in order for a

12  court to exercise its discretion to refuse to enforce a contract or clause under the

13  doctrine of unconscionability."  *Armendariz v. Found. Health Psychcare Servs., Inc.*,

14  24 Cal. 4th 83, 114 (Cal. 2000) (emphasis and alterations in original) ("Because

15  unconscionability is a reason for refusing to enforce contracts generally, it is also a

16  valid reason for refusing to enforce an arbitration agreement.").  The standard works

17  as a sliding scale "whereby the more procedurally oppressive the arbitration clause is,

18  the less evidence of substantive unconscionability is required to warrant the

19  conclusion that the agreements to arbitrate are unenforceable." *McManus v. CIBC*

20  *World Mkts. Corp.*, 109 Cal. App. 4th 76, 91 (2003).  For the reasons discussed below,

21  the Court finds that the arbitration provision in the Policies and Procedures is not

22  unconscionable under California law.

23  **I.    Procedural Unconscionability**

24     Plaintiffs argue that the arbitration agreement is procedurally unconscionable,

25  because the Retailer Agreement and the Policies and Procedures are oppressive and

26  the arbitration clause contains an element of surprise.

27  **1.    Oppression**

28     "The oppression that creates procedural unconscionability arises from an

10.

1    inequality of bargaining power that results in no real negotiation and an absence of

2    meaningful choice." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232

3    Cal.App.4th 1332, 1347–48, *as modified on denial of reh'g* (Feb. 9, 2015).

4    "California courts have held that oppression may be established by showing the

5    contract was one of adhesion or by showing from the 'totality of the circumstances

6    surrounding the negotiation and formation of the contract' that it was oppressive."

7    *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Grand*

8    *Prospec*, 232 Cal.App.4th at 1348).

9        **a.    Contract of Adhesion**

10       "While California courts have found that 'the adhesive nature of the contract is

11   sufficient to establish some degree of procedural unconscionability' in a range of

12   circumstances, the California Supreme Court has not adopted a rule that an adhesion

13   contract is per se unconscionable." *Poublon*, 846 F.3d at 1261 (citations omitted).

14   "[T]he adhesive nature of a contract, without more, would give rise to a low degree of

15   procedural unconscionability at most." *Id.* at 1261–62.  Here, the Retailer Agreements

16   that incorporate the Policies and Procedures by reference, which includes the

17   arbitration provision, are contracts of adhesion "because there was unequal bargaining

18   power between the [Plaintiffs] and [LLR], and the agreement was presented to

19   [Plaintiffs] on a take-it-or-leave-it basis." *See Poublon*, 846 F.3d at 1261.  Thus, at

20   most, the adhesive nature of the contract "would give rise to a low degree of

21   procedural unconscionability." *Id.* at 1261–62.

22       **b.    Meaningful Choice**

23       Because Plaintiffs were not employees of LLR, however, and Plaintiffs did not

24   have to elect to be retailers of LLR's products, there is an element of meaningful

25   choice that cuts against any potential for procedural unconscionability.  *See, e.g.*,

26   *Dean Witter*, 211 Cal. App. 3d at 768 (1989).  "We believe that any claim of

27   'oppression' may be defeated if the complaining party had reasonably available

28   alternative sources of supply from which to obtain the desired goods or services free

                                        11.

of the terms claimed to be unconscionable." *Id.* at 768.  "If 'oppression' refers to the 'absence of meaningful choice,' then the existence of a 'meaningful choice' to do business elsewhere must tend to defeat any claim of oppression." *Id.*  Plaintiffs could have sought to run their individual businesses through other direct marketing companies or other apparel companies.  Courts "have treated the availability of market choice as a determinative factor in the analysis of an assertedly adhesive agreement." *Id.* at 770.  Nevertheless, "[i]n many cases of adhesion contracts, . . . the weaker party lacks not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract; he must either adhere to the standardized agreement or forego the needed service." *Id.* (internal quotation marks omitted).

To the extent there is some degree of procedural unconscionability based upon the take-it-or-leave-it nature of the contract, Plaintiffs have not established that there was a *total* absence of meaningful choice.[5]  Therefore, there is minimal oppression based on the adhesive nature of the contract.

### 2.    Surprise

Plaintiffs also argue that the arbitration provision "contains an element of surprise," because it fails to provide the costs of arbitration, is unclear as to whether class arbitration is allowed, and is ambiguous as to whether the arbitrator' rulings must be maintained confidential or not. (Opp'n at 19, 20.)

### a.    Cost of Arbitration

Plaintiffs contend that LLR fails to provide any kind of arbitrator rates and, thus, the arbitration provision is procedurally unconscionable.  (*Id.* at 19.)  However, Plaintiffs confirmed that they had read the Policies and Procedures when they signed

---

[5] While Plaintiffs supply a list of policies and procedures from major MLM companies to show that many major MLM companies allegedly had unconscionable arbitration provisions, this does not show that there was a *total* absence of meaningful choice.  (*See* Declaration of Kevin D. Gamarnik In Support of Opposition to Defendants' Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This Action, Dkt. No. 27 ("Gamarnik Decl."), ¶¶ 11–26,  Exs. H–U at 58–120.).

1  the Retailer Agreement and, thus, expressly agreed to arbitration.  (*See* Alvarez Decl.

2  ¶ 16, Ex. 6 (Poston Ret. Agmt. 4.0); Alvarez Decl. ¶ 19, Ex. 7 (Sperring Ret. Agmt.

3  6.5.1); Alvarez Decl. ¶ 21, Ex. 8 (Marchant Ret. Agmt 6.5.1).)  Plaintiffs also had the

4  opportunity to read the Policies and Procedures at any time, had access to the

5  documents every time Plaintiffs placed an order in the Back Office, and were able to

6  cancel the Agreement.  (Lyon Decl. ¶ 3–4, Exs. 1–2 (Ret. Agmt. Version 4.0, ¶ 24;

7  Ret. Agmt. Version 6.5.1, ¶ 32).)  Further, the Court does not find that Plaintiffs have

8  met their burden of establishing that arbitration here is "prohibitively expensive" (not

9  just "high, excessive, or extravagant").  *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S.

10  228, 243, 244 (2013); *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 90–92

11  (2000)  ("The 'risk' that [a plaintiff] will be saddled with prohibitive costs is too

12  speculative to justify the invalidation of an arbitration agreement.").  Finding this

13  arbitration agreement prohibitively expensive would mean that the Court only

14  enforces arbitration agreements where the parties are wealthy; Congress cannot have

15  intended such an absurd result under the FAA. Therefore, the Court finds no element

16  of surprise based on the cost of arbitration.

17        **b.**  **Class Arbitration**

18        Plaintiffs argue that the lack of clarity as to "whether the arbitration can be

19  conducted on a class-wide basis, or, at the very least, as a mass-tort," as well as

20  "whether the mediation provision allow[s] for a group mediation, or require[s]

21  individual mediation" exacerbates the element of surprise.  (Opp'n at 19.)  Under the

22  FAA "courts may not infer consent to participate in class arbitration absent an

23  affirmative 'contractual basis for concluding that the party *agreed* to do so.'" *Lamps

24  Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (citing *Stolt-Nielsen S.A. v.

25  AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010)) (emphasis in original).  Plaintiffs

26  argue that "to a lay person, given the ambiguity, it would come as a surprise that class-

27  wide arbitration was inapplicable, and certainly, that a mass-tort arbitration was not

28  allowed." (Opp'n at 20.)  However, by Plaintiffs' reasoning, all arbitration

1   agreements omitting any mention of class arbitration would be unconscionable.  This

2   cannot be a proper interpretation of surprise.  Plaintiffs have not met their burden of

3   establishing that the Policies and Procedures contained an element of surprise.

4        ### c.   Ambiguity on Confidentiality of Rulings

5        Plaintiffs contend that "it is unclear whether the arbitrator's decision can be

6   publicized," because the arbitration provision requires confidentiality of the entire

7   arbitration process but also allows the arbitrator's decision to "'be reduced to a

8   judgment in any court of competent jurisdiction.'" (Opp'n at 20. (citing Gamarnik

9   Decl., Ex. F at 53).)  Plaintiffs argue that the scope of the arbitration provision would

10  surprise a reasonable person. (*Id.*)

11       The FAA instructs that, "as a matter of federal law, any doubts concerning the

12  scope of arbitrable issues should be resolved in favor of arbitration, [including]

13  whether the problem at hand is the construction of the contract language itself."

14  *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25.  The Court finds no element of

15  surprise as to the ambiguity on confidentiality of rulings, because the "terms of the

16  bargain are [not] hidden in a prolix printed form drafted by the party seeking to

17  enforce the disputed terms,"  as required in finding surprise under procedural

18  unconscionability.  *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (Ct.

19  App. 1982).  At most, the ambiguity may cause confusion, but this confusion is

20  resolved in favor of arbitration.

21       As a result, the Court finds that there is at most, minimal procedural

22  unconscionability.

23  ## II.   Substantive Unconscionability

24       "A provision is substantively unconscionable if it involves contract terms that

25  are so one-sided as to shock the conscience or that impose harsh or oppressive terms."

26  *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 1573 (2009) (internal quotation marks

27  omitted). "Substantive unconscionability may be shown if the disputed contract

28  provision falls outside the nondrafting party's reasonable expectations." *Id.*

1

### 1.    Confidentiality Provision and Informal Discovery

2       Plaintiffs argue that the confidentiality clause part of the arbitration provision is

3   substantively unconscionable because it would limit Plaintiffs' ability to contact

4   witnesses or engage in an informal discovery process. (Opp'n at 5–7.)  The arbitration

5   provision requires that "[t]he parties and the arbitrator . . . maintain the confidentiality

6   of the entire arbitration process and shall not disclose to any person not directly

7   involved in the arbitration process" information relating to the claims, testimony, or

8   discovery, amount of arbitration award, or rulings of the arbitrator on procedural and

9   substantive issues.  (Lyon Decl., Ex. 3 § 6.4.)  A "provision requiring confidentiality

10  is not unconscionable.  In regard to 'the fairness or desirability of a secrecy provision

11  with respect to the parties themselves, [there is] nothing unreasonable or prejudicial

12  about it,' and it is not substantively unconscionable."  *Sanchez v. Carmax Auto*

13  *Superstores Cal., LLC*, 224 Cal. App. 4th 398, 408 (2014) (citing *Woodside Homes of*

14  *Cal., Inc. v. Superior Court*, 107 Cal. App. 4th 723, 732).  Additionally, the Ninth

15  Circuit has rejected similar arguments that confidentiality obligations are

16  substantively unconscionable.  *See Poublon*, 846 F.3d at 1265–66 (finding that the

17  "confidentiality provision in the Arbitration Procedure is not substantively

18  unconscionable" and rejecting the argument that confidentiality provisions are

19  substantively unconscionable because they "inhibit employees from discovering

20  evidence from each other") (internal quotation marks omitted).[6]

21

22

——————————————————

23  [6] Plaintiffs adamantly argue that *Poublon*, which based its decision on *Sanchez*, the
    highest state court ruling issued at time, is not applicable to this case because *Ramos*

24  *v. Superior Court*, 28 Cal. App. 5th 1042, 1066, *as modified* (Nov. 28, 2018), *review*
    *denied* (Feb. 13, 2019) is now "'the ruling of the highest state court issued to date.'"

25  (Opp'n at 6.)  However, *Ramos* did not overrule *Sanchez*, and *Sanchez* remains good
    law.  *See Sarti v. Salt Creek Ltd.*, 167 Cal. App. 4th 1187, 1193 (2008), *as modified on*

26  *denial of reh'g* (Nov. 26, 2008) (holding that "there is no horizontal stare decisis in

27  the California Court of Appeal").

28

1    Thus, the Court does not find that the Policies and Procedures contain "terms

2    that are so one-sided as to shock the conscience or that impose harsh or oppressive

3    terms." *See Parada*, 176 Cal. App. 4th 1573.

4    **2.    Statutory Attorneys' Fees**

5    Plaintiffs argue that the arbitration "provision is substantively unconscionable

6    because it precludes Plaintiffs from recovering statutory attorneys' fees." (Opp'n at

7    7.)  The arbitration provision states that "[e]ach party to the arbitration shall be

8    responsible for its own costs and expenses of arbitration, including legal and filing

9    fees." (Lyon Decl., Ex. 4 at 55.)  "A provision that both sides bear the cost of their

10   own attorney[s'] fees 'merely restates the 'American rule' of general applicability'

11   and 't[akes] nothing away from' either party." *Fouts v. Milgard Mfg., Inc.*, No. C11-

12   06269 HRL, 2012 WL 1438817, at \*4 (N.D. Cal. Apr. 25, 2012) (citing *Woodside*

13   *Homes of Cal., Inc.*, 107 Cal.App.4th at 731); *see also Mitchell v. Health Net, Inc.*,

14   No. CV 18-5499-R (SKX), 2018 WL 6682428, at \*2 (C.D. Cal. Oct. 2, 2018) (holding

15   that the plaintiff's argument that the arbitration clause is substantively unconscionable

16   because it "precludes a statutory attorneys' fees award . . . is without merit because the

17   provision stating that each party will be responsible for their own attorneys' fees is a

18   default rule").  Moreover, the arbitration provision does not preclude the arbitrator

19   from awarding statutory fees, including attorneys' fees. *Fouts*, 2012 WL 1438817, at

20   \*4.  The agreement requires that arbitration be resolved by the American Bar

21   Association ("AAA") or JAMS, whose rules expressly allow the arbitrator to award

22   attorneys' fees if allowed by applicable law or provided by the parties' agreement.

23   (Lyon Decl., Ex. 4 at 54; Declaration of Elizabeth M. Weldon In Support of Reply to

24   Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This

25   Action, Dkt. No. 28 ("Weldon Decl."), Ex. 1, Rule 19(f); *see also* Weldon Decl., Ex.

26   1, R-47(d)(iii).)  Further, any ambiguity "should be interpreted most strongly against

27   the party who caused the uncertainty to exist," in this case, against Defendants and in

28   favor of allowing Plaintiffs to recover statutory fees. Cal. Civ. Code § 1654.

16.

1   Therefore, the Court does not find the statutory attorneys' fees clause substantively

2   unconscionable.

3        **3.     Statute of Limitations Waiver**

4        Plaintiffs argue that the arbitration provision is substantively unconscionable,

5   because the Retailer Agreement expressly limits the statute of limitations period for

6   "bring[ing] an action against LLR for any act or omission relating to or arising from

7   the Agreement . . . [to] one year from the date of the alleged conduct giving rise to the

8   cause of action, or the shortest time permissible under state law."[7]  (Ret. Agmt. 6.5.1,

9   ¶ 33.)  Plaintiffs explain that this statute of limitation waiver is substantively

10  unconscionable, because "it vastly restricts the Consultants' statutory rights" when

11  "Plaintiffs' claims provide significantly longer periods of time than one year within

12  which to assert a claim of violation."  (Opp'n at 9.)  However, "[i]t is a well-settled

13  proposition of law that the parties to a contract may stipulate therein for a period of

14  limitation, shorter than that fixed by the statute of limitations, and that such stipulation

15  violates no principle of public policy, provided the period fixed be not so

16  unreasonable as to show imposition or undue advantage in some way." *Moreno v.*

17  *Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003).  The Court finds that Plaintiffs have

18  failed to explain or show precisely how a one-year statute of limitations is

19  unreasonable, and thereby, unconscionable.  Thus, the Court does not find the statute

20  of limitations waiver substantively unconscionable.

21       **4.     Exemplary Damage Waiver**

22       Plaintiffs argue that the arbitration provision is substantively unconscionable,

23  because the Retailer Agreement limits statutorily imposed remedies, when seller

24  assisted marketing plan laws would allow Plaintiffs to seek statutory and exemplary

25  damages. (Opp'n at 10.)  The Agreement states that LLR and its affiliates "shall not

26

27  _____

28  [7] This one-year limitation only applies to Plaintiffs with version 6.5.1 of the Retailer Agreement.

be liable for, and Consultant releases, defends, and holds harmless LLR and its affiliates from, all claims for consequential and exemplary damages for any claim or cause of action relating to the Agreement."  (Ret. Agmt 6.5.1, ¶ 24.; *see also* Ret. Agmt. 4.0, ¶ 20.)  "[S]ince we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract.  [Thus] . . . the proper course is to compel arbitration."  *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003).  The Court, therefore, does not find the exemplary damage waiver substantively unconscionable.

### 5.   Lack of Mutuality

Plaintiffs argue that the arbitration provision is substantively unconscionable, because it lacks mutuality.  (Opp'n at 10.)  Plaintiffs specifically argue that the carve-out for certain intellectual property claims and claims based upon the non-solicitation provision shows a lack of mutual obligations to arbitrate because these are claims that only Defendants would assert.  (*See* Opp'n at 11–13.)  This carve-out, however, applies to both parties, not just Defendants. As the arbitration provision states, "any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be resolved by arbitration."  (Lyon Decl., Ex. 4 at 54.)  Thus, both parties are required to arbitrate claims, and the Court does not find that this carve-out is otherwise unreasonably one-sided.

Plaintiffs also argue that the relief reserved by LLR in the arbitration provision is too broad, and therefore unconscionable, because it "allows LLR to obtain provisional relief and any 'other relief available to safeguard its intellectual property rights and/or to enforce its rights under the nonsolicitation provision of the Agreement.'"  (Opp'n at 12 (citing Gamarnik Decl., Ex. F at 53).)  Plaintiffs' argument that this provision allows LLR to seek other equitable relief and even damages is meritless when the provision is read in context.  As Defendants explain,

the phrase "'or other relief available to safeguard and protect' . . . follows a list of relief to maintain the status quo—writs and injunctions—there is no indication it includes damages or relief that is not preservative." (Reply at 11.) Thus, the Court does not find that this phrase renders the Policies and Procedures substantively unconscionable.

### 6.   Unilateral Ability to Modify

Plaintiffs argue that the arbitration provision is substantively unconscionable, because it allows Defendants to unilaterally amend the terms of the arbitration provision. (Opp'n at 13.) A "unilateral modification clause does not make the arbitration provision itself unconscionable . . . [because the] implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016). The Court finds that Plaintiffs have not carried their burden of demonstrating that the unilateral modification clause renders the Policies and Procedures substantively unconscionable.

### 7.   Rocket-Docket Procedure

Plaintiffs argue that the arbitration provision is substantively unconscionable because it instructs the arbitration hearing to "occur within 180 days from the date on which the arbitrator is appointed and [to] . . . last no more than 5 business days." (Lyon Decl., Ex. 4 at 55.) However, "[t]here is nothing inherently unconscionable about setting a time limit by which an arbitration hearing must be held or limiting the length of such a hearing. Indeed, the very purpose of arbitration is to streamline the proceedings and obtain an expeditious resolution of disputes."[8] *Baxter v. Genworth*

---

[8] While the court in *Baxter* found a modest degree of unconscionability, that case involved an extremely complex employment dispute where the arbitration hearing was to be held within 120 days after an arbitrator was appointed and was limited to two eight-hour days, whereas here, the arbitration hearing is to be held within 180 days after an arbitrator is appointed and is limited to five days.

1   *N. Am. Corp.*, 16 Cal. App. 5th 713, 735 (Ct. App. 2017).  Thus, the Court does not

2   find that the arbitration hearing timeline renders the Policies and Procedures as so

3   one-sided as to shock the conscience.

4        In sum, the Court finds that the arbitration provision in the Policies and

5   Procedures is, at most, minimally procedurally unconscionable, but is not

6   substantively unconscionable.  Thus, the Court finds that the arbitration provision is

7   not unconscionable.  *Armendariz*, 24 Cal. 4th at 114  ("The prevailing view is that

8   [procedural and substantive unconscionability] must *both* be present in order for a

9   court to exercise its discretion to refuse to enforce a contract or clause under the

10  doctrine of unconscionability.") (internal quotation marks omitted) (emphasis in

11  original).

12       **C.     Severance of the Unconscionable Provisions**

13       Plaintiffs argue that the disputed provisions are not severable, because the

14  arbitration agreement is permeated with unconscionability, and thus, the agreement's

15  severability provision is immaterial. (Opp'n at 20.)  Since the Court has found that the

16  arbitration provision is not unconscionable, however, the Court also finds that

17  Plaintiffs arguments regarding severability do not apply.

18       **D.     Whether Non-Signatories May Enforce the Arbitration Provision**

19       Defendants concede that LuLaRoe and Lennon Leasing are not signatories to

20  versions 4.0 and 6.5.1. of the Retailer Agreement (LLR is).  (Mot. at 19.)  The

21  individual Defendants—Mark Stidham and DeAnne Brady, who are officers of

22  LuLaRoe, LLR, and/or Lennon Leasing—are not signatories to any version of the

23  Retailer Agreements.  (*Id.*) Plaintiffs argue that the non-signatories to the Retailer

24  Agreements cannot enforce the arbitration provision.  (Opp'n at 22.)

25       "[C]ourts have made clear . . . that an obligation to arbitrate does not attach

26  only to those who have actually signed the agreement to arbitrate."  *Lucas*, 875 F.

27  Supp. 2d at 1000.  "[I]n certain circumstances, a nonsignatory can compel a signatory

28  to arbitrate."  *Id.*  at 1000.  "[A] signatory can be compelled to arbitrate at the non-

signatory's insistence under an alternative estoppel theory—*i.e.*, because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." *Id.* at 1000–01 (internal quotation marks omitted). "Indeed, courts have generally found . . . [that] arbitration is more likely to be attained when the party resisting arbitration is a signatory." *Id.* (internal quotation marks omitted).

The doctrine of equitable estoppel "prevents a signatory from hav[ing] it both ways . . . on the one hand, seek[ing] to hold the non-signatory liable pursuant to the duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing] arbitration's applicability because the defendant is a non-signatory." *Robinson v. Isaacs*, No. 11CV1021 JLS (RBB), 2011 WL 4862420, at *2 (S.D. Cal. Oct. 12, 2011) (internal quotation marks omitted). Here, Plaintiffs' claims are based upon the Retailer Agreements, and Plaintiffs seek to hold Defendants liable for the claims based upon certain obligations in the Retailer Agreements. Thus, the Court finds that the non-signatories to the different versions of the Retailer Agreements can invoke the arbitration provision under the doctrine of equitable estoppel.

### E.   Whether the Arbitrator Should Decide Class Arbitrability

Defendants ask the Court to compel Plaintiffs to arbitrate on an individual basis. (Mot. at 20–22.) "[W]ho has the primary power to decide arbitrability turns upon what the parties agreed about that matter." *First Options*, 514 U.S. at 943 (internal quotation marks omitted). Here, the arbitration provision provides that "any controversy or claim arising out of or relating to the Agreement, or breach thereof, shall be settled by arbitration." (Lyon Decl., Ex. 3 § 6.4.) The Policies and Procedures, do not, however, include any language stating that arbitration can only proceed on an individual basis or that class-wide arbitration is prohibited. (*See* Lyon Decl., Ex. 3.)

21.

1   In *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013),
2   the Ninth Circuit stated that "[v]irtually every circuit to have considered the issue has
3   determined that incorporation of the American Arbitration Association's (AAA)
4   arbitration rules constitutes clear and unmistakable evidence that the parties agreed to
5   arbitrate arbitrability."  Here, the Policies and Procedures incorporate by reference the
6   AAA rules and JAMS rules.  (Lyon Decl., Ex. 3 § 6.4.)  Thus, it appears that based on
7   this Ninth Circuit ruling, the incorporation of the AAA rules into the Policies and
8   Procedures is evidence that the parties agreed to arbitrate arbitrability.  As a result, the
9   issue of whether Plaintiffs' claims can proceed on a class-wide basis is a question this
10  Court leaves for the arbitrator.  *See Lee v. JPMorgan Chase & Co.*, 982 F. Supp. 2d
11  1109, 1112–14 (C.D. Cal. 2013) (holding that the issue of whether parties had to
12  proceed in arbitration on an individual basis or on a class, collective, or representative
13  basis was a question for the arbitrator, not the court).

14  **V.      CONCLUSION**

15  In conclusion, the arbitration provision in the Policies and Procedures is a valid
16  and enforceable agreement to arbitrate Plaintiffs' claims.[9]  In consideration of a valid
17  agreement for arbitration, the fact that the parties do not contest that the scope of the
18  agreement covers the dispute at issue, that the non-signatories are able to enforce the
19  arbitration provision under equitable estoppel, and the FAA's policy favoring the
20  resolution of disputes through arbitration, the Court finds Plaintiffs must arbitrate their
21  claims.  The issue of whether Plaintiffs can arbitrate their claims on a class-wide basis,
22  however, is a question for the arbitrator.  Thus, Defendants' Motion to Compel
23  Plaintiffs to Individually Arbitrate and to Dismiss or Stay this Action is hereby
24  **GRANTED in part and DENIED in part.[10]**

25

26  [9] The mediation provision is also enforceable, as mediation is required prior to
27  arbitration. (*See* Lyon Decl., Ex. 4 at 54.)
    [10] The Court considered Plaintiffs' request for leave to file sur-reply and did not find
28  anything that required additional consideration.

The Court hereby **STAYS** this action pending the arbitration of Plaintiffs' claims.  See 9 U.S.C. § 3.  The Court further **ORDERS** that this action be removed from the Court's active caseload until further application by the parties or Order of this Court.  To allow the Court to monitor this action, the Court orders the parties to file periodic status reports.  The first such report is to be filed by October 18, 2019 unless the stay is lifted sooner.  The parties shall file successive reports every **120 days thereafter.**  Each report must indicate on the face page the date on which the next report is due.  All pending calendar dates are **VACATED** by the Court.  This Court retains jurisdiction over this action, and this Order shall not prejudice any party to this action.

Dated:  July 23, 2019

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE